## MIAMI TRANSIT COMPANY v. MABEL DALTON

23 So. (2nd) 572                                    June Term, 1945
October 23, 1945                                         Division B
Rehearing denied Nov. 16, 1945

*Worley, Gautier & Cannon,* for appellant.
*Hendricks & Hendricks,* for appellee.

THOMAS, J.:

At the outset three questions urged by appellant, one involving a charge given by the court, and two concerning charges requested and refused, may be dismissed by invoking the familiar rule that the merits of instructions will be judged by an examination of the complete charge and if, as a whole, the law is fairly stated the portions singled out for attack will, even though apparently erroneous, avail the appellant nothing. The remaining question is predicated on the plea of contributory negligence which appellant stoutly maintains was fully substantiated by the evidence.

We pause here to say that the appellee brought suit against the appellant for damages for the death of her husband claimed by her to have resulted from the negligent operation of a motor bus.

In order fairly to test the evidence offered to support the plea it seems appropriate to construct from the stipulation and from undisputed facts the background of the alleged negligent act. We shall then give a resume of the testimony relied upon by plaintiff to demonstrate negligence on the part of the driver of defendant's bus, before summarizing the evidence relevant to the plea.

Plaintiff's husband was riding a bicycle east on Southwest Sixteenth Street in Miami and the defendant's bus was turning into it from Southwest Thirteenth Avenue. The collision in which the cyclist was killed took place slightly west of the intersection. The "street" was paved to a width of 28 feet; the hard surface of the "avenue" was 18 feet wide, and

immediately west of this pavement was a grass plot 20 feet in width.

But three witnesses were called when the plaintiff's case was presented in chief—one to identify photographs the witness had taken after the mishap; one, the plaintiff herself, to give her deceased husband's age, state of health, and the like, which it is unnecessary to review because there is no challenge to the amount of the verdict; and one, an eyewitness, to give an account of what he saw immediately preceding and immediately following the collision.

This last witness lived at the southwest corner of the crossing, his house facing east toward the "avenue." About 8:30 in the morning he left his house to go into the yard for the morning paper, and as he did so he saw deceased riding east on the "street" and the bus proceeding north on the "avenue." He retraced his steps, closed and latched a screen door, and was in the act of shutting the main door when he heard a crash "looked up and . . . saw what was happening." He estimated that the bicyclist at the time he first noticed him was north of the center line of the "street" and about 35 feet west of the intersection. The impact occurred about "two and a half to three feet west of the end of the curbing on Sixteenth Street." A mark on the pavement was made, so this witness believed, by the axle of the bicycle and indicated the place where deceased was struck. This scar was 14 feet 9 inches distant from the north curb of the street and 13 feet 3 inches from the south curb, which would, if we accepted the witness' supposition as to what caused it, show that the cyclist was hit while traveling on his side of the thoroughfare. The distance between this point of impact, which the witness fixed by an indentation in the pavement, surmised by him to have been made by the axle of the bicycle, and the place where the victim's body came to rest was 8 or 10 feet. In substance this was the testimony upon which the plaintiff depended to establish actionable negligence.

It is significant that this, the only eyewitness offered by plaintiff, recalled that the deceased was, when the witness first saw him, riding along the "street" north of the center

line, that is, on the left-hand side of the street and when the witness last saw him was "down near the intersection" and "approximately in the center of Sixteenth Street."

We have difficulty in understanding just what omission or commission was considered to have constituted negligence on the part of the defendant or the operator of the bus. We have discovered no evidence of excessive speed, defective equipment, or anything of that sort. There was some evidence of failure by the driver to sound a horn, but there seems to have been no occasion to give warning, for it was not shown that any other vehicle was in the vicinity or any obstacle to the rider's seeing the bus, of large proportions, making the turn, and more, when the distances are studied it will be seen that the actual collision happened so quickly that there was no time for warning to be given or heeded. It may be that the point of impact fixed by the plaintiff's eyewitness was depended upon to establish negligence, because 9 inches south of the center line of the street, which would be to the bus driver's left, but locating the place of the collision by a scar on the pavement thought to have been made by the axle of the bicycle of the deceased is most inconclusive. From its very nature a bicycle struck from the front and forced backward would swerve to the left as well as to the right, depending upon the angle of the front wheel at the time of the blow, and there is no way of telling how far and in what direction this one went before it capsized and the axle marked the pavement.

The deceased was, as testified by plaintiffs own witness, traveling near the center of the street, if not actually north of it, on one of the most maneuverable of all vehicles, with 14 feet of pavement on his side of the road in which to operate. Borrowing for the moment from defendant's testimony, the bus was approximately 28 feet long and 8 feet wide, a conveyance of relative cumbersomeness. It seems only reasonable that had the deceased been alert he could have easily avoided the bus, for he had ample room, and from all accounts the bus was moving very slowly.

The matter of negligence appears reduced to the one ele-

ment—namely, the apparent striking of the deceased south of the center line, and this is, of course, dependent upon the frail assumption that the mark in the street was caused by the axle of the bicycle and, to go a step further, that this axle struck and marred the street at the exact time of the impact. Even if a bicycle rider can claim the entire half of a twenty-eight-foot street a short distance from an intersection at the time a bus 28 feet long and 8 feet wide is turning from an eighteen-foot pavement into that street and failure of the cyclist to give way could amount to negligence on the part of the driver of the bus, still the indentation or as the witness called it, "gouge," in the street is hardly reliable evidence of the precise place of the collision.

Assuming as true all testimony given by this sole eye-witness for the plaintiff, the evidence of negligence of the driver is most unsubstantial.

It is with this attitude that we now commence to examine the evidence of the defendant relative to the plea of contributory negligence. Several witnesses who were passengers on the bus testified in behalf of the defendant, and to all these, none of whom seems to have had any interest whatever in the outcome of the suit, was added to version of the bus driver. One witness, a school teacher, said the bus was on the right-hand side of the "street" as the turn was made from the "avenue," and upon the impact stopped instantly. One young school girl testified the bus stopped so suddenly it threw her companion off the seat, but that the bus had begun to slow down before making the turn. Three youthful students said the rider of the bicycle turned to his left, which put him directly in the path of the bus, and the driver also declared this to have been the victim's course. There were some discrepancies in the statements of the students who testified for the defendant, due probably to their youth; however, the general trend of the testimony for the defendant was that the deceased was traveling near the center of the street, that he made a left turn at a time when the bus was in the process of turning, that this placed him directly in the way of the bus, and that immediately he was struck, the bus driver stopped.

Taking into consideration the testimony of plaintiff's sole eyewitness that when deceased was first seen he was north of the center line and when last seen he was near it, we encounter no great task in reconciling the testimony of all witnesses except for the sole proposition that the cyclist was struck south of the center line of the street which, for the reasons already given, we consider highly conjectural.

Examining the evidence adduced to support the charge of negligence and considering with it the evidence introduced to substantiate the plea of contributory negligence, we are led to the conclusion that the latter abundantly prevailed.

It is always with reluctance that we disturb the judgment of the lower court on the ground that the verdict was not sustained by the evidence; however, where we have the conviction that there was "no substantial evidence to support the finding, or that upon the whole evidence the verdict is clearly wrong" we will not hesitate to reverse. McClellan et al. v. Wood, 78 Fla. 407, 83 So. 295. We decide that the rule applies in this case; therefore the judgment is—

Reversed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.