243 So.2d 140 (1971)
Charles B. GRIMM, Petitioner,
v.
PRUDENCE MUTUAL CASUALTY COMPANY, a Florida Corporation in Receivership and in the Process of Liquidation, Respondent.
No. 39687.
Supreme Court of Florida.
January 13, 1971.
*141 Jon E. Krupnick, of Walsh, Dolan & Krupnick, P.A., Fort Lauderdale, for petitioner.
Thomas B. Mimms, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for respondent.
PER CURIAM.
The District Court of Appeal, Fourth District, having certified to us that its decision in the case of Prudence Mutual Casualty Co. v. Grimm, 233 So.2d 664 (4th D.C.A.Fla. 1970) passes upon a question of great public interest, we accepted jurisdiction for review pursuant to Article V, Section 4(2), Florida Constitution, F.S.A.
Petitioner, Charles B. Grimm, sued Respondent, Prudence Mutual Casualty Co., for damages resulting from the theft of Grimm's automobile. At the time of the theft, Prudence had insured Grimm's automobile against theft, and upon demand, Prudence refused to pay the loss. Prudence answered the complaint by setting forth the defense of lack of insurable interest.
In January, 1967, Grimm had purchased from a Mr. Ash a 1964 Cadillac convertible. Grimm gave Ash his check for $1,500, and Grimm agreed to obtain an additional $1,000 financing from a bank. Ash advised Grimm that the Bank of Clearwater had a lien in the amount of $700 on the automobile, and it was agreed that this lien would be satisfied by Ash out of the $1,500 check from Grimm. It was further agreed that Grimm would deliver the final $1,000 when the clear title was delivered to Grimm.
Grimm received a bill of sale, which reflected the existence of a $700 lien. He took immediate possession of the car and proceeded to one of Prudence's agencies where he applied for the insurance policy which is presently in dispute.
Grimm's subsequent attempts to get Ash to pay off the lien and deliver a clear title finally resulted in a default judgment against Ash. The Bank of Clearwater also notified Grimm that the lien was actually $2,800 rather than $700, and that Grimm had to either assume the debt or the bank would repossess the automobile. Before the bank could repossess the car it was stolen.
Prudence denied Grimm's claim and refunded his premium. This suit followed.
The trial judge let the questions of insurable interest and damages go to the jury, which awarded a verdict of $1,800 for Grimm. The District Court of Appeals, Fourth District, reversed, holding that Grimm had no insurable interest as a matter of law, and that the trial judge erred in instructing the jury that Grimm could recover the fair market value of the property at the time of the loss. The District Court denied re-hearing and certified the questions to this Court as being of great public interest.
*142 The District Court held as follows:
"At the time of the alleged theft:
"(1) Grimm did not have legal title to the vehicle;
"(2) A bank held a lien which exceeded the value of the car as even acknowledged by Grimm;
"(3) Grimm had agreed to voluntarily surrender possession to the bank without charge or consideration;
"(4) Grimm was holding the car for the bank who was to repossess it within the next day or so;
"(5) A police officer to whom Grimm had reported the theft testified that Grimm stated he did not want the car back nor to be responsible for it;
"(6) Grimm had sued the person who had purported to sell the vehicle to him, asking either for delivery of title or a refund of the sum of $1500.00 which Grimm had paid and Grimm thereby obtained judgment for the sum of $1500.00.
"It is clear to us from the record that at the time of the alleged loss Grimm possessed neither legal or equitable title to the vehicle; had no insurable interest; and suffered no economic loss. In other words, he did not meet the criteria announced in Section 627.01041(2), F.S. 1967, F.S.A. The most that Grimm could be said to have would be a naked custody which he had already agreed to surrender without consideration."
To support its finding of no insurable interest, the District Court relies upon Peninsular Fire Insurance Co. v. Fowler, 166 So.2d 206 (2nd D.C.A.Fla. 1964). However, that reliance is misplaced. In that case the housing authority had placed into the registry of the court the amount owed to the Fowlers under a judgment which condemned the Fowler house. Thus the Fowlers' interest in the house had been converted into a money interest deposited with the court. In this context, the court held that when the house burned, the Fowlers had no insurable interest therein.
In the present case the bank had not repossessed the car. Grimm was still responsible for it and would have been liable for damages caused by it under Florida's dangerous instrumentality doctrine. Grimm could have satisfied the lien, thereby acquiring absolute title, and he could have sold the car, subject to the bank's outstanding lien. The mere fact that Grimm had agreed to the bank's peaceful repossession of the car in no way reduces his ownership or responsibility pending that repossession. The bank had the power to terminate Grimm's interest in the car, but until it exercised that power, Grimm remained the legal owner.
The significance placed by the court below on Grimm's lack of a Florida title certificate was equally misplaced. This Court has clearly stated that the absence of a Florida title certificate does not indicate the absence of a valid title, but rather the absence of a marketable title. Motor Credit Corporation v. Woolverton, 99 So.2d 286 (Fla. 1957). See Fla. Stat. § 672.401(2) (1969).
This Court recently decided the case of Smith v. State Farm Mut. Automobile Insurance Co., 231 So.2d 193 (Fla. 1970). In that case we approved the holdings of the First and Third District Courts of Appeal that bona fide purchaser for value of stolen automobiles have an "insurable interest" therein. See, Smith v. State Farm Mutual Automobile Insurance Co., 220 So.2d 389 (3rd D.C.A.Fla. 1969); and Skaff v. United States Fidelity & Guaranty Co., 215 So.2d 35 (1st D.C.A.Fla. 1968). The district court in the present case distinguishes these cases saying that in each case the insured had an equitable interest in the car because of the money he had paid. This reasoning is not only inaccurate but is also inapplicable to the present case.
*143 Fla. Stat. § 672.403 (1969) states that a purchaser of goods acquires all title which his transferor had or had power to transfer. In the case of the stolen cars the insured parties could not have any equitable interest therein since the transferors had no power to transfer. Their insurable interest, then, was their right to mere possession against all but the rightful owner. Barnett v. London Assurance Corporation, 138 Wash. 673, 245 P. 3, 46 A.L.R. 526; Norris v. Alliance Insurance Company of Philadelphia, 1 N.J. Misc. 315, 123 A. 762, and Skaff v. United States Fidelity & Guaranty Co., supra, hold that the purchaser of a stolen automobile's right to possession against all but the rightful owner is the right that gives the purchaser an insurable interest. This rule of law was approved by us in Smith v. State Farm Mutual Automobile Insurance Co., supra. The district court mis-read this case when it held that the stolen automobile purchaser's equitable interest therein was the insurable interest.
There is no doubt but that Grimm had a right to possession of the automobile until such time as the bank's prior right cut his off. Nor is there any doubt but that Grimm had more than just an equitable interest in the automobile. He was not purchasing a stolen automobile, but rather an automobile with a larger lien than he had been aware of. Grimm was the legal owner of an automobile which was about to be repossessed.
With respect to respondent's argument that the sale to Grimm was never completed so no titled passed, it is sufficient to point out Fla. Stat. § 672.401(2) (1969), which provides that title passes "* * * at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place;" Grimm's default judgment against Ash did not cause the title to revert to Ash, so Grimm remained the legal owner.
Petitioner also challenges the District Court's holding that it was error for the court to instruct the jury that Grimm could recover the fair market value of the property at the time of the loss. Immediately prior to this questioned instruction the court had quoted Fla. Stat. § 627.01041, F.S.A. which defines the measure of an insurable interest as the extent to which the insured might be damnified by loss. The court also stated, "* * * if you should find for Mr. Grimm in this case, the amount of the recovery you may award him is limited to the value of his insurable interest in the automobile on the date of the alleged theft."
There is voluminous authority in Florida for the rule that the merits of instructions will be judged by an examination of the complete charge and if, as a whole, the law is fairly stated the portions singled out for attack will avail the appellant nothing. Miami Transit Co. v. Dalton, 156 Fla. 485, 23 So.2d 572 (1945); Dowling v. Loftin, 72 So.2d 283 (Fla. 1954); General Ready-Mixed Concrete v. Wheeler, 55 So.2d 331 (Fla. 1951); Staff v. Soreno Hotel Co., 60 So.2d 28 (Fla. 1952); Martin v. Stone, 51 So.2d 33 (Fla. 1951); Diecidue v. State, 131 So.2d 7 (Fla. 1961). The District Court should have applied this rule in the present case. The instructions taken as a whole put the jury on notice that Grimm's recovery was to be limited to his insurable interest in the vehicle.
The decision of the District Court is quashed and the cause remanded for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C.J., ERVIN, CARLTON and ADKINS, JJ., and DREW (retired), J., concur.