BARNS, Justice.
Appellant-plaintiff brought suit to foreclose a mortgage and a claim of lien for money paid and labor and material furnished; defendants answered and counterclaimed. The counterclaim was defensive and also sought affirmative relief by way of damages. The final decree dismissed plaintiff’s bill and provided for affirmative relief to the defendants whereupon plaintiff appealed. It appears that the chancellor erred in dismissing the bill and in providing for affirmative relief to the defendants.
The mortgage was executed to secure the payment of a note given for labor and material to be furnished by the plaintiff in the building of an ice plant, pursuant to a contract simultaneously executed. The defendants admit the nonpayment of any portion of the mortgage and claim that no installments are yet due because of the provisions of the contract; and the counterclaim is based on nonperformance of the contract by the plaintiff-appellant.
Facts
The basic and controlling factors are not in controversy. Any conflict in the testimony on other matters for present purposes may well be omitted.
A provision of the contract provides:
“Party of the first part agrees to construct and install said ice plant and equipment in a good and workmanlike fashion and agrees that upon installation said plant will function properly so as to produce 6 tons of ice daily.
“Payments on the above mortgage, while set to begin June IS, 1950, shall not begin until 30 days after the plant is completed and in operation.
“Legal fees incident to clearing title and drawing contracts and other papers are to be paid by parties of second part.”
The construction and installation of the equipment was completed with the exception of a conveyor specified in contract and may be another item or two. The construction and installation have been substantially completed except as above stated and the plant has been delivered to the owners-defendants and operated by them for some time before the commencement of this suit.
The principal controversy is over the question of whether or not the contractor-plaintiff represented by the above quoted language that the plant would produce six tons of merchantable ice daily. There is some evidence to indicate that the plant may produce the six tons, when the controls are set for faster freezing; but then the ice is cracked and unmarketable. When the controls are set so as to produce marketable ice, it has produced only about three tons daily. The weight of the evidence is clear that the plant with the equipment provided will not produce six tons of marketable or merchantable ice.
The evidence shows that the defendants-owners were not experienced with ice plants and the inference may reasonably be drawn from the facts that the plaintiff knew that the ice was to be made for sale generally and not for a special prtrpose for which cracked ice would be satisfactory. The conclusion is that the implied representation of the plaintiff was that the plant would produce six tons of marketable ice daily, and it will not and never has.
Conclusions
The defendants do not seek rescission ab initio but cancellation in futuro as to defendants’ obligations. Since no issue was *539 raised by the pleadings in the court below as to defendants’ right to rescind the contract ab initio, we do not decide whether they would have such right in the circumstances here present.
Since the defendants have accepted the plant without the installation of the conveyor, or any other items, they have in respect to such items waived performance by the plaintiff, but they have not waived the defense of failure of consideration pro tanto.
As to the equities between the parties, it would seem that the plaintiff’s lien under the mortgage should extend to the fair value of the benefits received by the defendants as of the date of surrender to the defendants less the sum of $4,500 already paid on the contract; by benefits is meant what have the defendants gained; not what has the plaintiff lost. Or, stated differently, the chancellor should find and determine on a quantum meruit basis the value of the plant at the time of its delivery to the defendants, and the purchase price should be abated to such value. Against such value would be credited the cash payment made and a decree of foreclosure should be entered for the deficiency, if any, between the value of the plant and the down payment, with interest from the date of the mortgage, and the defendants should be given a time within which to take themselves out of default by making the installment payments commencing thirty days after the entry of the decree.
Plaintiff also claims a lien of $1,000 for work done and materials furnished by the plaintiff to the defendants at their request in the construction of the ice plant. The defendants’ answer is that they are “not advised” and “demand strict proof”. The contract between the parties provides:
“It is expressly understood and agreed that any items not expressly set forth and^not covered in this contract, which may be ordered by parties of the second part, are to be furnished and installed only upon agreement as to the price therefor and with the express understanding that said items shall be properly secured by supplemental mortgage upon the entire ice plant and real estate upon which it is constructed” ,
It is a maxim of equity that “equity regards that as done which ought to have been done”, which means that equity will treat the subject matter, as to collateral consequences and incidents, in the same manner as if the final acts, contemplated by the parties had been executed exactly as they ought to have been. 19 Am.Jur. 315, Equity, pars. 456-457.
Applying the maxim to the case at bar then equity will treat the claim as a mortgage for the amounts advanced, and work done and materials furnished by the plaintiff, if within the scope of the above quoted terms of the contract, as may be determined by the chancellor.
Counterclaim. Defendants’ answer contains a counterclaim seeking special damages alleging that in reliance upon the agreement of the plaintiff to erect an “ice plant that would produce six tons of ice per day” the defendants entered into contracts with others to furnish them ice and that they have been forced, to their injury. The plant seems to have been installed substantially as agreed upon, but fails to have the qualities which the plaintiff, Johnson, stipulated it would have, i. e., according to our interpretation, that the plant would produce six tons of marketable ice per day. The representations failed, but the defendants have failed to otherwise support their counterclaim for special damages by adequate proof of their allegations. The counterclaim for affirmative relief should have been denied, as such, but allowed to stand as defensive.
Reversed.
DREW, C. J., and TERRELL and ROBERTS, JJ., concur.