278 So.2d 299 (1973)
OVEN DEVELOPMENT CORPORATION, a Florida Corporation, Appellant,
v.
Olga MOLISKY et al., Appellees.
Nos. R-441 to R-443.
District Court of Appeal of Florida, First District.
May 22, 1973.
Rehearing Denied June 8, 1973.
*300 W.J. Oven, Jr., Tallahassee, for appellant.
Alfred O. Shuler, of Shuler & Shuler, Apalachicola, William R. Phillips, and E. Martin McGehee, of Ausley, Ausley, McMullen, McGehee & Carothers, Tallahassee, for appellees.
WIGGINTON, Judge.
Plaintiff in each of the above-entitled consolidated cases has appealed a final judgment based upon a jury verdict finding in favor of the defendants. It is appellant's position that the verdicts are not supported by competent and substantial evidence and that, therefore, the trial court erred in denying its motion for judgment after verdict or for a new trial.
There were originally six cases pending in the Circuit Court of Franklin County. These were consolidated into three cases and all were tried together. They have been consolidated into a single case in this court for the purpose of appeal.
Appellant, Oven Development Corporation, was plaintiff in three actions instituted by it against appellees, Olga Molisky, Louis C. Clem and wife, Eloise H. Clem, Dareld R. Morris and wife, Florence K. Morris; these actions sought the foreclosure of a mechanic's lien claimed by appellant against their respective residence properties.
Appellees Molisky, Clem, and Morris were likewise plaintiffs in three separate actions brought by them against appellant, Oven Development Corporation, seeking to cancel of record the latter's claims of lien and praying for damages resulting from an alleged breach of the construction contracts entered into by them with Oven, which contracts formed the basis of the latter's claim against their dwellings. The trial court consolidated the two cases involving Oven and Molisky, the two cases involving Oven and the Clems, and the two cases involving Oven and the Morrises. The three cases resulting from such consolidations were tried together, and separate verdicts and judgments rendered in each. It is from these judgments that this appeal is taken.
The complaints filed by Oven were in substantially the same form except for the amounts claimed to be due it from the defendants, and the description of the real estate against which the liens were filed. Each such complaint alleged the execution of a written contract for the construction of a dwelling in Franklin County, a performance of that contract by Oven, the failure of the respective owner-defendants to pay the balance due thereon, and the filing, recording, and serving of the claims of lien. The complaints prayed for a judgment representing the balance of the contract price due Oven and for foreclosure of the lien claimed as security therefor. In each of their suits against Oven, appellees Molisky, Clem and Morris alleged the written contract entered into by them for the construction of a dwelling on real estate which they owned in Franklin County and payment of all sums due by them to Oven under the contracts except the final payment in the amount of $5,230.80, $7,034.98, and $12,989.93 respectively. Their complaints alleged a breach of the contract on the part of Oven in that it erected the dwellings in such an unskillful and negligent manner that numerous defects and inadequacies resulted therefrom, specified the alleged defects and inadequacies, and alleged refusal on the part of Oven to correct them. The complaints sought cancellation of the claim of mechanic's liens filed by Oven and money damages resulting from the breach of their contracts.
The three sets of cases were then consolidated by orders which provided that the complaints filed by Oven should be deemed to be its claims against the owners, the complaints filed by the owners should be considered counterclaims, and the answers filed by Oven should be considered answers to the counterclaims.
At a pretrial conference it was stipulated that the written contracts were correctly *301 alleged in the pleadings; that the contractor's claims of lien had been filed and served as alleged; that all of the extras claimed by it had been authorized in each case except for folding doors on the bathtub and one load of limerock; that a dispute existed as to the authorization of these two items; and that the respective balances claimed by Oven were in the amount of $5,230.80 in the case of Molisky, $7,034.98 in the case of Clem, and $12,989.93 in the case of Morris. The stipulation further provided that a question existed as to whether or not the Molisky and Clem houses were located on the building lots as provided in the original plot plans. At the conclusion of the trial the jury rendered verdicts in all three cases which were substantially identical in all material respects, the Molisky verdict reading, "We, the jury, find for the defendant OLGA MOLISKY. So say we all."
Post-trial motions for judgment in accordance with its motion for directed verdict or, alternatively, for a new trial were filed by Oven in each case and severally denied by the court. Final judgment in each case was accordingly rendered, adjudging that Oven take nothing, that its complaint be dismissed, and that its claims of lien be cancelled and discharged.
The undisputed facts as gleaned from the record establish that appellees planned to move their residences from West Virginia to Carrabelle in Franklin County, Florida. Contact was made by appellee-Morris with Oven regarding construction by the latter of new prefabricated homes of the "Kingsbury" design for the three parties. Plans and specifications for each of the proposed dwelling houses to be built for appellees were submitted and approved. Written contracts for the construction of the dwellings were executed by the parties, and Oven commenced construction sometime in May, 1971. Before any of the houses were completed in every detail, appellees arrived in Carrabelle to take up their new residence there. Over the objection of Oven, Morris and Clem insisted upon moving into the dwellings while they were still under construction. Appellee-Molisky moved into her house shortly thereafter with Oven's consent. After the owners had occupied their dwellings, Oven asked each of them for a "punch list" specifying all deficient items which they considered needed to be either completed or corrected to make the dwellings conform with the construction contract. Punch lists were furnished by the owners, and Oven set about to complete and correct all items then listed as either deficient or incomplete.
The evidence indicates that all of the items appearing on Morris' punch list were either corrected or complied with by Oven except the furnishing of a double oven and a self-cleaning oven, neither of which was called for by the plans, and a noise factor in the air conditioning system which was never remedied for the reason that Morris told the subcontractor who called to work on the unit not to do anything further because he planned to file suit against Oven anyway.
The evidence indicates that all items appearing on the Clems' punch list were completed by the contractor except the driveway was constructed of limerock instead of oyster shell because the latter material was not available in the area at the time; a fixed muntin instead of a removable one was installed in the window located in the radio room where no window was called for by the contract; a pest control treatment which was not called for by the contract was not supplied; and a question concerning the alignment of the kitchen cabinet and window was corrected with the owner's consent by the construction of a valance over the window.
All of the items included on the Molisky punch list were completed by the contractor.
At a later date, in September, 1971, Oven sent its crews to the three dwellings with instructions to attend to such last minute details as might require attention *302 and to ask the owners if there were anything else which they required to be done on the dwellings, to which inquiry the owners all replied in the negative. Shortly thereafter Oven sent to each of the owners its invoice requesting final payment due under each of the contracts, to which communications it received no reply. Oven thereupon filed a claim of lien against each of the properties owned by appellees on which the dwellings had been constructed. It was following this action that appellees instituted their actions to cancel the liens filed against their properties by Oven and for damages resulting from the alleged breach of the contracts by it, which suits were followed by actions instituted by Oven to foreclose its mechanic's liens and to recover the balances which it claimed to be due under the contracts.
At the trial Oven offered proof establishing the above-stated facts which were not disputed by appellees. Appellees, however, testified to numerous instances of what they considered to be inferior workmanship in performance of the building contract by Oven, the substitution of inferior materials for those specified in the contract, and other complaints which they contended made their homes less attractive and functional as dwellings, because of which they considered themselves to be damaged in substantial amounts. None of the complaints testified to at the trial by the owners were made to Oven prior to the institution of these actions, nor was any demand made by them of Oven to correct the alleged deficiencies prior to the filing of their suits.
The first question presented for our consideration is whether from the facts shown by the record it must be held as a matter of law that appellant substantially performed the contracts entered into by it with each of the appellees, thereby entitling it to payment of the balance due under each of the contracts involved in these cases diminished only by such damages as may have been suffered by appellees as a result of the incompletions and deficiencies in the performance of their respective contracts.
In Williams v. Board of Public Instruction[1] the Supreme Court held that building contracts such as those involved in the case sub judice form a well-recognized exception to the rule exacting strict performance.
In Ocean Ridge Development Corp. v. Quality Plastering, Inc.,[2] a plastering subcontractor sued the owners of a dwelling house for the balance due under a plastering contract entered into between the parties. Plaintiff alleged that it had performed the contract in accordance with its written terms and defendant was obligated to it for the final payment called for therein. Defendant denied performance and counterclaimed for damages alleged to have been suffered as a result of the breach of the contract by plaintiff because of improper performance of the work and delay in completing the job. In invoking the doctrine of substantial performance as applicable to that case, the court said that substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor's right to recover whatever damages may have been occasioned him by the promisee's failure to render full performance. The court held that whether or not there has been substantial performance is normally a question of fact for the trier of the facts to resolve based on all the relevant evidence. In that case, however, the Supreme Court held that the evidence in the record before it was so sufficiently clear that the issue of substantial performance *303 could have been withdrawn from the jury and determined in plaintiff's favor as a matter of law.
It is our view of the evidence contained in the record before us that the issue of substantial performance is likewise so sufficiently clear as to have required the trial court to hold as a matter of law that Oven had substantially completed the contracts which formed the basis of its claim for mechanic's liens without submitting that issue to the jury.
As heretofore stated, where a building contractor has substantially performed the contract between the parties, he is entitled to be paid the full contract price agreed upon diminished only by the damages which the owner has suffered as a result of such breaches of the contract as may be established by competent evidence. The measure of damages to which an owner is entitled, because of his contractor's failure to perform their contract strictly in accordance with the plans and specifications, was held by the Supreme Court to be an amount equal to the difference between the value of the building as actually constructed and the value as it would have been if the building had been properly constructed strictly in accordance with the plans and specifications. As an admonition, the court further stated that when on account of defects on the part of the contractor it is necessary that repairs be made, the owner cannot make it an unnecessary expense or in an unnecessarily extravagant form and recover as damages the amount of his disbursements. He must confine his claim to such sums as will represent the cost of effecting the repairs and correcting the deficiencies as economically as it is possible to effect them consistent with proper workmanship and construction.[2A]
In the later case of Johnson v. Dichiara[3] the Supreme Court suggested an alternative measure of damages to which an owner may be entitled as a result of failure of a contractor to fully perform a building contract in accordance with the plans. In that case the court held that in the case of substantial performance the contractor should be allowed only the quantum meruit value of the building as constructed less the amount of previous payments made on the contract during the course of construction.
Stated differently, the Third District Court of Appeal in Ray v. Dock and Marine Construction, Inc.[4] held that the measure of damages where there has been substantial but not exact performance is generally the reasonable cost of making the work performed conform to the contract. In elaborating on the foregoing principle, the same court in the case of Edgar v. Hosea[5] said:
"`As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure *304 if properly completed. Despite this latter rule, however, there is some authority to the effect that damages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, are the amount required to reconstruct it to make it conform to such plans and specifications, rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.' [emphasis added]"
Turning to the record before us it appears without dispute that, in support of their claim for damages resulting from Oven's alleged breach of contract, defendants offered no testimony as to the quantum meruit value or the fair market value of their dwellings as constructed in order to show an entitlement to the difference between that value and the contract price claimed by Oven as is authorized by some of the foregoing authorities. Appellee-owners did, however, testify at length as to numerous items involved in the construction of their dwellings with which they were unhappy and dissatisfied but admitted that they had agreed to or had accepted most of such deficiencies.
With regard to the Morris dwelling, expert witnesses called in his behalf testified that in their opinion the cost of correcting the deficiencies which they found to exist from their inspection of the building would be the sum of $1,595.00. No other dollar value of damages was testified to either by Morris or any witness called in his behalf. The balance of the contract price claimed by Oven under the Morris contract was $12,989.93. By its verdict the jury found in favor of Morris, awarding nothing to Oven on its claim of lien and nothing to Morris on his counterclaim for damages.
The expert witnesses called to testify on behalf of the Clems stated that in their opinion the amount necessary to correct the deficiencies found by them to exist in the Clem dwelling was the sum of $1,080.00. Neither Clem nor any other witness called in his behalf testified as to the dollar value of the remaining damages claimed to be suffered by him as alleged in his counterclaim. The balance of the contract price claimed by Oven under its mechanic's lien was the sum of $7,034.98. By its verdict the jury found in favor of Clem and awarded no amount to Oven for the balance of contract price which it claimed to be due and no amount to Clem for the damages which he claims to have suffered.
The expert witnesses called to testify on behalf of Molisky stated that in their opinion the cost of correcting the deficiencies found by them to exist in the construction of this dwelling was the sum of $1,350.00. No witness called on behalf of Molisky testified as to the dollar value of any other damages claimed by her as alleged in her counterclaim. The balance of the contract price claimed by Oven on this dwelling is the sum of $5,230.80. By its verdict the jury found in favor of Molisky, awarding nothing to Oven on its claim for the balance due on the contract and nothing to the owner on her claim for damages as alleged in her counterclaim.
It is our view that there is no competent or substantial evidence in the record which can be said to support the jury verdicts rendered herein. In Davis v. Stow[6] the plaintiff-owner sued the defendant-contractor for damages allegedly suffered as a result of the defendant's breach of a building contract resulting from his failure to properly waterproof the walls of a building constructed by him. The only competent proof of plaintiff's damages was the sum of $1,500.00 estimated by his witnesses to be the amount necessary to cure the deficiency resulting from the defendant's failure *305 to properly perform the contract. Despite this, however, the jury returned a verdict in favor of plaintiff in the sum of $4,500.00. The Supreme Court held that the record was lacking of any proof that plaintiff had suffered damages in excess of the sum of $1,500.00 testified to by his witnesses, so the amount of the verdict over and above that amount was required to be remitted, in default of which a new trial would be ordered.
In Berwick Corp. v. Kleinginna Investment Corp.[7] plaintiff claimed, as part of the damages to which it was entitled because of its unlawful eviction by defendant, the value of certain improvements made by it to the premises. In holding that the trial court properly ruled that plaintiff was not entitled to the damages claimed for the unamortized value of the improvements made by it to the leased premises, the Third District Court of Appeal commented that the record failed to reflect any competent evidence as to what the improvements were, what was paid for them, or the proportion which was unused. The court reiterated the well-established rule that before damages may be awarded there must be evidence authorizing or justifying the award of a definite amount.
Because appellees herein failed to offer any competent proof as to the definite dollar value of the damages suffered by them as a result of Oven's alleged breach of contract other than the amounts hereinabove mentioned, which amounts were far less than sufficient to offset the balance of the unpaid contract price claimed by Oven, the judgments appealed based upon such verdicts cannot be allowed to stand. We therefore hold that the trial court erred in denying appellant's motion for a new trial because of the reasons hereinabove stated. The judgments are accordingly reversed and the causes remanded for a new trial.
CARROLL, DONALD, K., Acting C.J., and RAWLS, J., concur.
NOTES
[1] Williams v. Board of Public Instruction, (Fla. 1952) 61 So.2d 493, 494.
[2] Ocean Ridge Development Corp. v. Quality Plastering, Inc., (Fla.App. 1971) 247 So.2d 72.
[2A] Bayshore Development Co. v. Bonfoey, 75 Fla. 455, 78 So. 507.
[3] Johnson v. Dichiara, (Fla. 1956) 84 So.2d 537.
[4] Ray v. Dock and Marine Construction, Inc., (Fla.App. 1966) 183 So.2d 237.
[5] Edgar v. Hosea, (Fla.App. 1968) 210 So.2d 233, 234.
[6] Davis v. Stew, (Fla. 1952) 60 So.2d 630.
[7] Berwick Corp. v. Kleinginna Investment Corp., (Fla.App. 1962) 143 So.2d 684.