459 So.2d 343 (1984)
COMMUNITY DESIGN CORPORATION, Appellant,
v.
Joseph D. Antonell, Appellee.
Nos. 83-2279, 84-326.
District Court of Appeal of Florida, Third District.
October 23, 1984.
Rehearing Denied December 17, 1984.
*344 William A. Friedlander, Miami, for appellant.
Douglas D. Stratton and Franklin J. Siegel, Miami, for appellee.
Before NESBITT and DANIEL S. PEARSON, JJ., and DELL, JOHN W., Associate Judge.
NESBITT, Judge.
Community Design Corporation (CDC) appeals a final judgment against it in a contract case and the award of attorney's fees and costs. Antonell cross-appeals the amount of attorney's fees. We affirm in all respects.
Joseph Antonell was hired by CDC to work as an architectural draftsman on the Brickell Key project. He worked on a weekly basis at $10.00 per hour, with time and one-half for overtime.
Sometime in the fall of 1980, Charles Cheezum, the then-president of CDC, promised a bonus to any employee still working at Christmastime of 1980, if the drawings were complete by that time.[1] The amount *345 each employee was to receive was apparently to be determined by the recommendation of Shirley Wooster, CDC's vice president. Wooster, Antonell's supervisor, promised a one-week paid vacation if the drawings were completed on time. After these promises were made, Antonell worked overtime in an effort to complete the drawings by the specified date.
On December 24, 1980, with Antonell still in CDC's employ, the draftsmen's drawings were collected and blueprints were made. After Christmas, and through much of 1981, changes were made to the drawings, some of which were necessitated by a February 23, 1981 contract which required CDC to coordinate the drawings of various subcontractors. Final acceptance of the drawings for construction purposes occurred by March of 1982.
When Antonell received neither the bonus nor the paid vacation, he sued to recover both. The jury found for him on both claims, finding for CDC on a third claim for a promised raise.
CDC makes two arguments on the contract issue which are worthy of discussion. It contends, first, that the contract is too indefinite and uncertain to be enforced because there was no agreement as to the amount of the bonus, the degree of completion required and the division among the employees. We disagree.
Courts are reluctant to hold contracts unenforceable on grounds of uncertainty, especially where, as here, one party has received the benefit of the other's performance. Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404, 408 (Fla. 1974); Burton v. Keaton, 60 So.2d 770 (Fla. 1952). When the existence of a contract is clear, the jury may properly determine the exact terms of an oral contract, Pan American Bancshares, Inc. v. Trask, 278 So.2d 313 (Fla. 3d DCA 1973), which often depend on the credibility of the witnesses. While the exact amount of the bonus[2] and the degree of completion required[3] were disputed, there was sufficient evidence for the jury to find an oral contract between the parties with terms which support the award in this case. Goetz v. Brialmont, 287 So.2d 361 (Fla. 3d DCA 1973).
CDC asserts that there was no agreement as to exactly how much each employee would receive. While this is true, it is necessarily so because the bonus was to be divided among those still employed at Christmastime and in amounts recommended by Ms. Wooster. Once the drawings were completed, CDC's contractual duty to act in good faith in recommending a bonus for those who qualified arose. It was Wooster's failure to recommend a bonus, and CDC's subsequent failure to pay one, which constituted the breach.[4] It was appropriate for the jury to *346 resolve the compensation question, Gulf Solar, Inc. v. Westfall, 447 So.2d 363, 365 (Fla. 2d DCA 1984), and the amount awarded is reasonable based on Antonell's efforts in completing the drawings. Cf. Robinson v. Pinsker, 303 So.2d 706 (Fla. 3d DCA 1974).
CDC's second argument is that Antonell did not substantially perform the conditions precedent to receipt of the bonus. Whether Antonell substantially performed was a proper question for the jury to decide. Oven Development Corp. v. Molisky, 278 So.2d 299, 302 (Fla. 1st DCA 1973); Ocean Ridge Development Corp. v. Quality Plastering, Inc., 247 So.2d 72, 75 (Fla. 4th DCA 1971). We find substantial, competent evidence to support the jury's verdict. Bermil Corp. v. Sawyer, 353 So.2d 579, 583 (Fla. 3d DCA 1977).
CDC also challenges the award of attorney's fees pursuant to section 448.08, Florida Statutes (1981) on two theories: (a) a bonus is not a wage within the meaning of the statute; and (b) Antonell was not a prevailing party because he did not prevail on all his claims and was awarded only part of what he sought on one of his claims. We reject both theories.
The first district noted in Doyal v. School Board of Liberty County, 415 So.2d 791, 793 (Fla. 1st DCA 1982) that the legislative intent in enacting section 448.08 was to avoid the inequity resulting from an employee being required to pay an attorney in actions for unpaid wages. The court in Gulf Solar, discussing section 448.08, utilized definitions of wages which included bonuses. We find those definitions are appropriate, especially in light of the legislative intent expressed in Doyal.
Addressing CDC's second theory, we hold that a party prevails within the meaning of section 448.08 when there is an affirmative judgment rendered, even if it is for less than the amount claimed and recovery is not had on all counts. Cf. Hub Cap Heaven, Inc. v. Goodman, 431 So.2d 323 (Fla. 3d DCA 1983); American Insulation of Fort Walton Beach, Inc. v. Pruitt, 378 So.2d 839 (Fla. 1st DCA 1979); Peter Marich & Associates, Inc. v. Powell, 365 So.2d 754 (Fla. 2d DCA 1978). (These cases reached the same holding in interpreting a similar provision of the Florida Statutes, § 713.29.)
We find no merit in Antonell's cross-appeal. Accordingly, the judgment is, in all respects, affirmed.
NOTES
[1] The amount of the bonus was disputed, but was clearly between $20,000 and $35,000. The degree of completion required was also disputed.
[2] The parties acknowledge that a particular amount was offered, which distinguishes this case from those in which the amount is indefinite or left for future agreement. See, e.g., Drake v. Block, 247 Iowa 517, 74 N.W.2d 577 (1956); Varney v. Ditmars, 217 N.Y. 223, 111 N.E. 822 (1916).
[3] While there were many changes made to the drawings after the initial blueprinting, there was evidence both that such changes are normal in the industry and that many were required by a February, 1981 contract which called for coordination of the architectural drawings with the electrical and mechanical drawings. Therefore, the jury could have found that the completion contemplated was the initial blueprinting and that the changes made were either those common in the industry, those required by a subsequent contract, or both.
[4] We are in no way suggesting that employers are not free to establish bonus plans like that in Parrish v. General Motors Corp., 137 So.2d 255 (Fla. 2d DCA 1962). There, the bonus plan gave the employer, in writing, the discretion to award, or choose not to award, a bonus. Such a writing clearly establishes the employer's intention and does not give rise to a contractual bonus right. Here, the contract is oral and the evidence is reasonably susceptible to the conclusion that once the drawings were complete the duty to recommend and pay a bonus arose. To find otherwise would allow CDC to induce extra efforts from its employees by oral promises and then hide behind a cloak of vagueness resulting from conflicting testimony.