488 So.2d 838 (1986)
COUSINS CONSTRUCTION CO. NO. III, INC., of Florida, a Florida Corporation, Appellant/Cross-Appellee,
v.
BLACK, CROW & EIDSNESS, INC., a Florida Corporation; and Continental Casualty Company, a Foreign Corporation, Appellees/Cross-Appellants.
No. 85-1215.
District Court of Appeal of Florida, Second District.
April 9, 1986.
*839 Raymond C. Conklin of Stolba, Englander, Conklin, Brainard, DiSano & Verona, P.A., St. Petersburg, for appellant/cross-appellee.
John R. Bush of Bush, Ross, Gardner, Warren & Rudy, Tampa, for appellees/cross-appellants.
GRIMES, Judge.
In this complex and tortuous litigation involving claims of professional malpractice against Black, Crow & Eidsness, Inc. (BC & E), Cousins Construction Co. No. III, Inc., of Florida (Cousins) appeals from a $40,000 summary final judgment entered in its favor.
In 1973 Cousins, a land developing company which was considering the purchase and development of certain real estate, contracted with BC & E to perform the engineering work. Following receipt of BC & E's engineering documents, Cousins purchased the land and commenced construction. Within a few months, Cousins encountered numerous problems with respect to the land that made further development impossible. Construction was stopped late in 1974. The following year, Cousins brought suit for damages contending that BC & E was guilty of negligence and breach of contract for failing to advise Cousins of drainage, soil, and fill dirt problems, failing to design an adequate percolation pond and failing to furnish an accurate estimate of the cost of development. Following the introduction of extensive evidence, the court determined Cousins to be negligent as a matter of law on its negligence claim and submitted the balance of the case to the jury. The jury found against Cousins on its contract claim but returned a verdict for Cousins against BC & E in negligence for $65,600.
Following the trial, the court entered an order, the effect of which was to set aside the jury verdict, to grant Cousins' motion for directed verdict on liability on the breach of contract claim, and to award Cousins a new trial on damages only. Judge Robert Beach gave as the basis for ordering a new trial on damages that he had erred in one of his jury instructions on damages and that the verdict was grossly inadequate and against the manifest *840 weight of the evidence. These orders were affirmed by a per curiam decision without opinion of this court reported in Black, Crow & Eidsness, Inc. v. Cousins Construction Co. No. III, 351 So.2d 412 (Fla. 2d DCA 1977), cert. denied, 368 So.2d 1362 (Fla. 1979).
After the case was returned to the trial court, Judge David Seth Walker, who had then been assigned to the litigation, granted Cousins' motion to limit issues at the retrial of the case. The order precluded BC & E from the presentation of any evidence with respect to liability and to contributory or comparative negligence. However, it indicated that BC & E would be entitled to show that Cousins had failed to mitigate its damages at or subsequent to the time when it knew or should have known of BC & E's negligence.
In the meantime, in 1978 Cousins and its loan guarantors entered into an agreement with Barnett Mortgage Trust (Barnett), the real estate investment trust that had loaned Cousins the money with which to acquire the land and commence the development. Under the agreement, Cousins waived the right to contest the foreclosure of Barnett's mortgage on the land, conveyed to Barnett certain personal property connected with the development and assigned to Barnett the right to two-thirds of Cousins' recovery of damages in its lawsuit against BC & E. Cousins and the guarantors further agreed to pay Barnett $24,000 and to fund an additional $20,000 for future costs in the conduct of the lawsuit. Barnett agreed to release Cousins and the guarantors from any personal liability under the note and mortgage on the property. Upon the motion of BC & E, the court entered a partial summary judgment in 1982 finding that because of such agreement, Cousins' measure of damages could not include any prior or present indebtedness to Barnett.[1]
Thereafter, Judge Frank White, who was then assigned to the case, entered an order on Cousins' motion in limine, directing that BC & E was precluded from the presentation of any evidence with regard to the issues of liability, contributory negligence, comparative negligence, reliance or proximate cause. Finally, at a pretrial conference *841 held in 1985, the court, over Cousins' objection, entered a summary final judgment in favor of Cousins for $40,000. Cousins appeals that judgment. BC & E cross-appeals, complaining of several interlocutory orders which preceded the entry of the final summary judgment.
The primary issue in this case concerns the effect of the agreement with Barnett upon Cousins' cause of action against BC & E. In entering the summary judgment, Judge White reasoned that because of the Barnett agreement, Cousins could not recover from BC & E any development expenditures that had been paid with funds borrowed from Barnett. Apparently, Judge White arrived at the figure of $40,000 because Cousins' certified public accountant had testified at the trial that Cousins had spent on the development only $40,000 more than the monies borrowed from Barnett. Cousins points out that even if the court's rationale was proper, its ruling overlooked liabilities of $347,698 not covered by the Barnett loan which had been incurred but not yet paid. More importantly, Cousins contends that the Barnett agreement should be totally disregarded and the fact of its existence deemed inadmissible on the issue of damages. BC & E relies upon the logic that since all but $40,000 of Cousins' expenditures came from the Barnett loan, and the Barnett loan has now been satisfied without personal liability, Cousins' recovery should be limited to $40,000.
There is very little law on this issue. However, the opinion in Robert E. Owen & Associates v. Gyongyosi, 433 So.2d 1023 (Fla. 4th DCA 1983), petition for review denied, 444 So.2d 417 (Fla. 1984), warrants consideration. In that case, Owen, an engineering firm, contracted with Southeastern to conduct periodic inspections on a sewer project being constructed on Southeastern's property. Despite Owen's certification that the sewer project was properly constructed, Owen had not properly checked the system and it had been constructed in a manner which would not pass governmental inspection. About the time the system was completed, Southeastern had contracted to sell the property to Mr. and Mrs. Gyongyosi. In settlement of the controversy over the sewer system which arose between Southeastern and the Gyongyosis, Southeastern obtained a release in exchange for conveying the property to the Gyongyosis, paying them $50,000 and assigning to the Gyongyosis its contract with Owen. The Gyongyosis then sued Owen for damages incurred in rectifying the defective sewer system. The court found that the Gyongyosis' damages were $146,222.62 and entered a judgment for that sum less a setoff of the $50,000 that Southeastern had paid to the Gyongyosis.
On appeal, the court held that there was competent evidence to support the finding that Owen was liable for the Gyongyosis' costs of repairing the sewer system. In a split decision on the cross-appeal, the court further held that the judgment should not have been subject to the $50,000 setoff of the money paid by Southeastern to the Gyongyosis. After dismissing the applicability of section 768.041(2), Florida Statutes (1979), because Owen and Southeastern were not joint tortfeasors, the court stated:
Absent the foregoing statute as authority for the set-off, the question presents itself whether a wrongdoer, such as Owen in this situation, can claim the benefit of a payment on account of the injury in question from a collateral source. The law appears well settled in Florida that a tortfeasor may not avail himself of payments from collateral sources such as insurance policies owned by the plaintiff or third parties, employment benefits, or social legislation benefits.
433 So.2d at 1025. In a different context, the collateral source rule has also been applied to a claim in contract. Walker v. Hilliard, 329 So.2d 44 (Fla. 1st DCA 1976).
As a consequence of the Barnett agreement, Cousins was released from its obligation to repay Barnett more than one million dollars in exchange for land that was stipulated at the first trial to be worth $250,000. Thus, in a very real sense, the *842 execution of this agreement could be considered as providing Cousins with benefits from a collateral source. If BC & E's professional malpractice with respect to the development caused a specified amount of damages, why should BC & E be permitted to avail itself of the benefits of a favorable settlement which Cousins may have been able to secure from Barnett over three years later?
Moreover, we do not believe that evidence of the Barnett agreement would be admissible to show mitigation of damages. At the first trial, Cousins had agreed to forego any claims for loss of profits and was seeking to recover only for its expenditures on the development. The fact that most of the money which was spent on the development had been obtained through a loan from Barnett had no effect upon Cousins' claim against BC & E for the loss of that money. Therefore, Cousins' subsequent settlement of its loan obligation to Barnett should also have no effect upon the amount of its recovery. We hold that Cousins' settlement with Barnett was irrelevant to its claim against BC & E.
Likewise, we cannot subscribe to Judge Walker's order limiting the damages (later followed by Judge White) which was apparently premised upon the assumption that Barnett is now the real party in interest. As we interpret the agreement, Barnett is simply entitled to receive two-thirds of any proceeds which Cousins is able to recover from BC & E. Hence, the court erred in limiting Cousins' recovery to $40,000.
On cross-appeal BC & E first asks us to reconsider our previous ruling in which we upheld Judge Beach's posttrial orders. While an appellate court is not bound to its prior decision in a second appeal of the same case, it should depart from the law of the case only in unusual circumstances so as to prevent manifest injustice. Strazzulla v. Hendrick, 177 So.2d 1 (Fla. 1965). We see nothing in BC & E's new appeal on these issues not previously considered in the prior appeal, and we find no error in Judge Beach's orders.
BC & E also contends that following the receipt of our mandate Judge Walker erred in granting Cousins' motion to limit issues and that Judge White thereafter erred in granting Cousins' motion in limine. We agree. There was no basis to eliminate any issues except those pre-empted by Judge Beach as a result of the first trial. A careful examination of the record demonstrates that the only issues which Judge Beach decided as a matter of law were BC & E's negligence and breach of contract. Therefore, the successor judges erred in precluding the presentation of evidence on the issues of comparative negligence, proximate cause, and reliance.[2] However, we do not pass upon whether any of the specific evidence introduced at the first trial that has been referred to by the parties in their briefs should be considered as bearing upon these issues so as to be admissible at the new trial.
We reverse the summary final judgment and remand the case for a new trial on Cousins' claims for damages upon the theories of negligence and breach of contract. At the trial, the parties may introduce proper evidence upon the issues of comparative negligence, proximate cause, and reliance.
RYDER, C.J., and SCHEB, J., concur.
NOTES
[1] As the basis for his ruling, Judge Walker stated:

It is absolutely clear from the evidence presented that the Plaintiffs have satisfied, in full, by mutual exchange, satisfaction and accord, the entirety of the prior indebtedness which existed between the Plaintiffs and the BARNETT MORTGAGE TRUST COMPANY. This satisfaction was achieved by means of a transfer of Title to Land for an extinguishment of present existing debt. As part of the agreement which extinguished the obligation between the Plaintiff herein and BARNETT MORTGAGE TRUST COMPANY, the latter agreed that the Plaintiff herein could continue its prosecution of the present action against the Defendants herein "unless counsel for the Plaintiff herein agreed that the Plaintiff herein not be required to do so." Therefore, it affirmatively appears, and beyond a question is indicated, that BARNETT MORTGAGE TRUST COMPANY has abdicated and receded from its right to pursue any remedies herein and has left the sole and discretionary determination in the hands of the counsel for the instant Plaintiff, whoever that may, from time to time, be.
This Court is aware of the authority which allows counsel to proceed with representation of a real party in interest even though that party in interest is not specifically named in the style of the case. It is suggested herein that counsel for the Plaintiffs, COUSINS CONSTRUCTION COMPANY NO. III, INC., OF FLORIDA are proceeding actually for the benefit of BARNETT MORTGAGE TRUST COMPANY, but the evidence and exhibits received by this Court does not substantiate such an allegation.
It is clear from the agreement between the Plaintiff herein and the BARNETT MORTGAGE TRUST COMPANY that counsel for the Plaintiff herein would have the sole and unbridled discretion as to whether or not to proceed with and prosecute a civil action against the Defendants herein. In other words, the primary obligee, BARNETT MORTGAGE TRUST COMPANY, once it had settled with the Plaintiffs herein, divested itself of any determinative authority whatsoever with regard to the present action, and left the same in the sole, exclusive and non-reviewable discretion of the attorneys for the Plaintiffs herein. Therefore, it must be the judgment and final ruling of this Court that any and all indebtedness between the Plaintiff herein and the BARNETT MORTGAGE TRUST COMPANY have been settled and fully compromised as a result of binding accord and satisfaction.
[2] While his order granted Cousins a "new trial on damages only," it is clear that Judge Beach viewed comparative negligence and proximate cause as bearing on the amount of damages. He gave jury instructions on both issues, and in the new trial order he acknowledged the possibility that Cousins may also have been negligent. With respect to reliance, Cousins is seeking to recover its expenditures on the aborted development project which were attributable to BC & E's breach of contract. Therefore, whether particular expenditures were made in reliance upon BC & E's proper performance of the contract is a viable issue which relates to the subject of damages. See Beefy Trail, Inc. v. Beefy King International, Inc., 267 So.2d 853 (Fla. 4th DCA 1972); 22 Am.Jur.2d Damages § 46 (1965).