579 So.2d 248 (1991)
CITY OF MIAMI BEACH, Florida, a Florida Municipal Corporation, and Miami Beach Redevelopment Agency, a Public Agency Existing under the Laws of Florida, Appellants,
v.
Stephen CARNER, Irwin H. Mason, and Lis, Inc., a Florida Corporation, As General Partners in Carner-Mason Associates, Ltd., a Florida Limited Partnership, D/B/a Miami Beach Marina, Appellees.
Nos. 89-2726, 89-3003, 89-3004, 90-49, 90-50 and 90-126.
District Court of Appeal of Florida, Third District.
April 30, 1991.
*249 Daniels & Talisman and Sam Daniels, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel S. Perwin, Miami, Laurence Feingold, Miami Beach, for appellants.
Steel, Hector & Davis and Gerry S. Gibson and Thomas M. Karr, Miami, for appellees.
Before NESBITT, BASKIN and JORGENSON, JJ.
NESBITT, Judge.
This is a consolidated appeal of orders entered on partial summary judgment and final judgment following a jury trial in a breach of contract case. Based on the following analysis, we reverse and remand for a new trial.

*250 Facts

While the specific facts relevant to each issue will be set forth within this opinion as necessary, the foundation facts are that in 1983 Carner-Mason Associates, appellee/plaintiff below, entered into a thirty-year lease under which the firm was to build and operate a marina on the City of Miami Beach's property. Various problems arose and in 1985, Carner-Mason stopped paying rent and filed a breach of contract suit against the City of Miami Beach and the Miami Beach Redevelopment Agency, appellants/defendants below. Carner-Mason remained on the property, however, and the city filed an eviction suit in 1986.[1] The firm ultimately remained on the property until 1989 when its mortgage was foreclosed.
The contract action alleged that the defendants had breached numerous provisions of the lease agreement. During the course of litigation, the trial court entered various rulings which were erroneous and which require a new trial. We shall address only those primary issues which control our decision and those secondary issues which may arise and impact the second trial.

Joint Liability of Redevelopment Agency and City
The first issue is whether the trial court correctly ruled that the redevelopment agency was a party to the lease and liable for any breach to the same extent as the city. We hold that the agency is jointly liable. While the directed verdict upon which this holding was based cannot stand, we treat the motion for directed verdict as if it were a motion for summary judgment on the issue and thus affirm that ruling. Cf. Harvey Bldg., Inc. v. Haley, 175 So.2d 780 (Fla. 1965) (Summary judgment may be categorized as a "pre-trial motion for a directed verdict." (citing to Locke v. Stuart, 113 So.2d 402 (Fla. 1st DCA 1959)).
The agency consists of the city commission and key members of the city administration, including the city manager, who is the executive director of the agency, and the assistant city manager, who is the agency's deputy director. After the lease was executed, the city and the agency entered into an agreement whereby the agency was to be completely responsible for administering and performing the contract and was to receive all income from the project. While the agency argues that it cannot be jointly liable with the city because its name is not listed as a party to the lease and because any warranties made were made exclusively by the city, the record shows that addenda to the lease which were incorporated into the final agreement define the city as both the city and its agency. The agency jointly invited bids; the lease's preamble stated that by resolution, the agency authorized and directed the city manager to negotiate with Carner-Mason and that the agency determined it was in South Beach's best interest to redevelop the marina on land subject to the control of the agency and pursuant to permits issued to the agency by the Department of Environmental Resources and the U.S. Corps of Engineers.
These facts indisputably show that the agency is jointly liable with the city for any breaches of the marina project lease agreement.

Partial versus Total Breach of the Contract
The trial court entered summary judgments as to liability for breach of the lease agreement against the city on five issues. Three issues of liability were left for trial. As to whether appellants would be liable for damages for total or partial breach, the lower court repeatedly ruled that Carner-Mason could recover for total breach of contract and that no issues as to *251 partial breach would be submitted to the jury. This was patently erroneous. The rule is quite clear that a contracting party, faced with a material breach by the other party, may treat the contract as totally breached and stop performance. However, if the complaining party continues to demand performance from the breaching party, damages can only be recovered for partial breach. Restatement (Second) of Contracts §§ 84, 243, 246, 247 (1981); see Johnson v. Dichiara, 84 So.2d 537 (Fla. 1955).
In this case, Carner-Mason claimed a total breach had occurred in August 1985 when the firm's principals decided the project was doomed and stopped construction. Nevertheless, by its actions, Carner-Mason did not treat any alleged breach as a total breach since it continued to stay on the property for four more years, until October 1989 when its mortgage was foreclosed.
Nevertheless, we do not hold as a matter of law that Carner-Mason is entitled to recover only for any partial breach which may be proven because it remains to be determined whether a non-waiver clause in the lease entitled Carner-Mason to remain on the property after declaring a breach and still recover total breach damages. The non-waiver clause states that failure of a party to enforce a lease provision would not waive a breach which may occur.
Defendants argue that the parties waived the non-waiver provision: Carner-Mason when it filed suit, and the defendants when they made written demand of eviction. They further argue that the provision is sufficiently ambiguous that it does not preclude the argument that Carner-Mason may be limited to damages for partial breach since it elected its remedy by choosing to remain on the property for four years after declaring a breach had occurred. See Protean Investors, Inc. v. Travel, Etc., Inc., 499 So.2d 49 (Fla. 3d DCA 1986); Doral Country Club, Inc. v. Curcie Bros., Inc., 174 So.2d 749, 751 (Fla. 3d DCA), cert. denied, 180 So.2d 656 (Fla. 1965). Thus, upon remand, both the significance of Carner-Mason's remaining on the property after declaring a breach and the significance of the lease agreement's non-waiver provision on the type of damages to which Carner-Mason should be entitled upon proof of a material breach must be determined.

Partial Summary Judgments
As to the summary judgments, we hold that all five bases upon which summary judgment on liability was entered for the plaintiff were erroneous because genuine issues of material fact remain to be decided. Each issue involved in the summary judgment will be addressed separately.

Failure of the City to Provide Survey Information
The trial court found that the city breached the contract by failing to provide Carner-Mason with adequate survey information on the marina site. The trial judge found that the city had a contractual obligation to have provided this information. However, there is no specific term in the contract requiring the city to pay for such a survey. Moreover, the record shows that the city did provide Carner-Mason with a survey. However, if, upon retrial, it is determined appellants were required to provide a survey, questions remain whether it was adequate and timely delivered. Obviously, summary judgment was prematurely entered on this issue.

Failure to Provide Carner-Mason with a Fifty-Foot Wide Baywalk Easement

The trial court ruled that the city breached the lease agreement by cutting the width of the baywalk, which was to be a part of the project, in half from fifty feet to twenty-five feet and by conveying the other half to the original developer of the project, South Shore Developers, Inc. (SSDI), as part of a legal settlement with that group. We find that issues of material fact remain regarding this issue. The record shows that Carner-Mason entered into the lease with knowledge that SSDI had claims pending as to its right to develop the marina project.
Within the areas termed by the parties as Areas Three and Four of the project *252 where the disputed baywalk lies, Carner-Mason knew that, according to the terms of the lease agreement, its rights were terminable at will by the city. It remains to be decided whether the lease guaranteed a baywalk of the size claimed by Carner-Mason. Thus it was error to enter summary judgment on this issue.

Failure of the City to Obtain Shoreline Restoration Permit
The record shows that a shoreline restoration permit was necessary to build the marina's contemplated dry-stack boat storage facility and baywalk. The parties stipulated that such a permit was necessary to build within Area Two of the marina site. We find that the trial court erred in holding, as a matter of law, that the city breached the agreement by failing to have a shoreline restoration permit in place when the agreement was signed. It is true the lease warranted that as of the day the contract was signed, the city had the necessary shoreline restoration permit; it is also true that the city stipulated that it did not have such a permit until two years after the lease was signed. However, this evidence alone does not prove a breach of the agreement in light of the fact that there was evidence that Carner-Mason knew and accepted the fact that the city lacked the permit when the lease was signed.
After Carner-Mason signed the lease, and before the city signed, Carner-Mason's attorney sent the city manager a letter which a jury could find acknowledges that the city did not have a permit and which demands that one be obtained. The city manager signed the letter and returned it to Carner-Mason's attorney. Thus, the letter was signed by both parties to the lease. There remain the questions whether this letter became a part of the contract under the contemporaneous instrument rule, International Ship Repair & Marine Servs., Inc. v. General Portland, Inc., 469 So.2d 817 (Fla. 2d DCA), review denied, 479 So.2d 117 (Fla. 1985); Popwell v. Abel, 226 So.2d 418 (Fla. 4th DCA 1969), and whether the letter modifies the terms of the contract to allow the city to obtain the permit after the contract was made. Consequently, we reverse the summary judgment granted Carner-Mason on this issue.

City's Failure to Have in Place a Sovereignty Submerged Land Lease

The lower court held that the lease agreement required the city to have in place a sovereignty submerged land lease authorizing construction of piers in the waters of Area Two for the duration of the leasehold. The trial court further held that the city breached this provision because it had not secured such a lease on the date the contract was signed and did not secure a five-year lease until late 1984 nor a twenty-five year lease until almost two years later.
The trial judge failed to consider, however, that in the agreement at issue, the city did not obligate itself to secure any leases at all, but rather necessary "licenses and permits." Moreover, the evidence showed that at the time the lease was signed, the Florida Department of Natural Resources' Internal Improvement Trust Fund, the agency charged with issuing permission to operate on state property, was only granting one-year renewable licenses. It was not until August 1, 1983, two months after the lease agreement was made, that Florida Administrative Code Rule 18-21.004(1)(i) took effect, requiring that all state marina and commercial drydock facility licenses be converted to sovereignty submerged land leases upon expiration or renewal.
Based on this and other evidence in the record, there clearly remain issues of material fact as to whether the city breached the agreement by its failure to have the appropriate license, permit or lease in place at the time the contract was signed. Accordingly, it was error to enter summary judgment on this issue.

Failure of the City to Obtain Utility and Access Easements behind Hope and Rebecca Towers

Another order of summary judgment was predicated on the city's failure to timely obtain the necessary access and utility *253 easements over the Hope and Rebecca Apartment Towers property. We find that genuine issues of material fact remain which preclude summary judgment on this claim. The lease agreement is not clear as to whether the city was required to provide an easement or simply a right-of-way, nor was it established, as a matter of law, that Carner-Mason required an easement to build the marina and that a right-of-way would not suffice.
A right-of-way is not the same thing as an easement. "The term `right-of-way' has been construed to mean ... a right of passage over the land of another... . It does not necessarily mean a legal and enforceable incorporeal right such as an easement." Lovey v. Escambia County, 141 So.2d 761, 766 (Fla. 1st DCA), cert. denied, 147 So.2d 530 (Fla. 1962). The distinction is important since there is substantial competent evidence in the record to prove that Carner-Mason was provided a right-of-way; there is no evidence that Carner-Mason was denied complete access to the site across the apartment towers' land. Additional questions of fact remaining which are relevant to this issue, including whether the contract entitled Carner-Mason to a type of baywalk which included vehicular access to the marina, as it alleges, or simply pedestrian and golf cart access, as appellants contend.
On the question of the utility easement, summary judgment was inappropriate because proof of some actual damage is an element of liability for breach of contract. E.g., Scott-Steven Dev. Corp. v. Gables by the Sea, Inc., 167 So.2d 763, 764 (Fla. 3d DCA 1964), cert. denied, 174 So.2d 32 (Fla. 1965). Carner-Mason did not conclusively prove on summary judgment that it suffered any damage due to the delay in obtaining the utility easement. Accordingly, we reverse on this issue also.
While under the circumstances, our reversal of the summary judgment orders is determinative of the need for a new trial, we shall address additional issues raised in this appeal which will likely arise upon retrial.

Verdict Form
The erroneously entered summary judgments, discussed above, disposed of five breaches alleged by Carner-Mason. Three other alleged breaches were left for trial. Evidence was offered at trial by both plaintiff and defendants to prove or disprove liability on those remaining issues, yet in the verdict form given to the jury, the jury was not required to decide the defendants' liability on those issues, nor was it required to decide how much of the delay in question was caused by the defendants' breach. Instead, an inadequate verdict form was presented to the jury which simply requested that the jury fill in the total amount of damages to be awarded. This was clear error as the form used prohibited the jury from rendering a verdict on the issues tried. In a multifaceted case such as this, involving numerous alleged breaches, it is strongly advised that a special interrogatory verdict form be used. See Security Mut. Casualty Co. v. Bleemer, 327 So.2d 885, 886-87 (Fla. 3d DCA 1976); Morrison v. Hansen, 213 So.2d 306 (Fla. 1st DCA 1968).

Use of the Collateral Source Rule to Exclude Evidence of Foreclosure

The jury awarded Carner-Mason reliance damages of $20,643,875 for losses incurred from the time the contract was signed in 1983 until Carner-Mason was removed from the property due to the foreclosure of its mortgage in 1989. Defendants argue on appeal that the trial judge erroneously applied the collateral source rule to exclude evidence that the leasehold was sold at foreclosure for $11,360,000. They claim that since Carner-Mason is no longer required to repay its lender that amount, any damages which the firm may ultimately recover would have to be reduced by at least that amount.[2] It has been held that the collateral source rule does not apply to pure breach of contract *254 cases. E.g., Trustees of Cameron-Brown Inv. Group v. Tavormina, 385 So.2d 728, 729 (Fla. 3d DCA 1980). The rationale for this was clearly stated in Tavormina, where, Judge Hendry, writing for this court and addressing the application of the collateral source rule to the breach of a loan agreement, stated:
[I]t is basic to the law of contracts that the measure of damages is the plaintiff's injury, rather than the defendant's culpability. Although sharp distinctions blend where the breach of contract has some personal or emotional effect on another party, the laborious formulation of a multimillion dollar loan agreement between businesspeople is hardly such an instance.
We find unconvincing Carner-Mason's argument that Cousins Constr. Co. No. III, Inc. v. Black, Crow & Eidsness, Inc., 488 So.2d 838 (Fla. 2d DCA), review denied, 492 So.2d 1330 (Fla. 1986), controls this case and permits use of the collateral source rule to exclude evidence of the foreclosure sale price. Cousins was not a pure contract case as is the instant case. Rather, the defendant there was alleged to be, and found guilty of, negligence as well as breach of contract. Bangert v. Beeler, 470 So.2d 817 (Fla. 1st DCA 1985) and Walker v. Hilliard, 329 So.2d 44 (Fla. 1st DCA 1976), also relied on by Carner-Mason are equally unconvincing since they both involved insurers and the possibility of subrogation as set out in section 768.76, Florida Statutes (1989), dealing with use of the collateral source rule in negligence cases. Likewise, Hartnett v. Riveron, 361 So.2d 749, 751 (Fla. 3d DCA 1978), an insurance fraud case, is unavailing to Carner-Mason since the statement therein on use of the collateral source rule was clearly dicta.
Based on the foregoing, the trial court erred in utilizing the collateral source rule to prohibit the introduction of evidence on the price received for the leasehold at foreclosure.

Exclusion of Testimony on Carner-Mason's Failure to Insure Plans Complied with the Fire Code

The trial court ruled inadmissible evidence which appellants sought to enter to show that Carner-Mason was partly responsible for some construction delays. The appellants proffered evidence that the construction plans submitted by Carner-Mason contained numerous and serious fire code violations which caused a delay in the issuance of a certificate of occupancy. Appellants claim that the excluded evidence of witness Robin Hale, a City of Miami Beach Fire Department officer, went to the issue of causation and appellants' attempt to reduce damages for which they could be found liable by showing that some delays were Carner-Mason's fault. Carner-Mason counters that appellants were improperly trying to prove a condition precedent to appellants' necessity to perform until the plans complied with the code. Carner-Mason further claims that because a condition precedent must be specifically pled, Fla.R. Civ.P. 1.120(c), and that because here it was not, the evidence was inadmissible.
We find that the testimony does not tend to show an excuse for appellants' nonperformance because appellants never claimed that they failed to perform, i.e., breached the contract, due to Carner-Mason's failure to comply with any condition precedent of having all plans comply with the Code. The evidence was offered to show that assuming defendants had breached, their breach was excused by Carner-Mason's alleged anticipatory breach in violating the fire code. Thus, the evidence went to causation of damages and was offered to show Carner-Mason's responsibility for some delays. Accordingly, Hale's testimony on this issue should be permitted upon retrial.

Denial of Jury Instruction on Mitigation of Damages
Clearly the appellants' requested jury instruction on mitigation of damages should have been given, especially in light of our analysis, supra, that Carner-Mason may well be entitled to damages only for partial breach of contract. See Young v. Cobbs, 110 So.2d 651 (Fla. 1959); State ex rel. Dresskell v. City of Miami, 153 Fla. 90, 13 So.2d 707 (Fla. 1943). The question is *255 whether defendants properly pled this point. The city expressly pled mitigation of damages as an affirmative defense when in its answer it alleged Carner-Mason's "mismanagement of funds and poor scheduling." While mitigation could have been more artfully pled, this allegation was enough to put Carner-Mason on notice of the defense.
For the foregoing reasons, the summary judgments, final judgment, eviction dismissal, and all other post-judgment orders are reversed with these directions, and the City of Miami Beach and the redevelopment agency are hereby awarded a new trial.
Reversed and remanded.
NOTES
[1] The eviction action, Case No. 89-2726, is herein appealed by the city which suffered an adverse judgment below. Since Carner-Mason vacated the premises upon suffering a foreclosure by its mortgage lender, we hold the appeal of this action to be moot. However, because of our decision on the merits of the claims addressed herein involving the summary and final judgments, we reverse the judgment in the eviction action with directions to dismiss the complaint so as to protect all parties from any adverse inference which could otherwise result.
[2] When Carner-Mason was removed from the property in October 1989, it owed its mortgagee $14,561,558.18.