962 So.2d 923 (2007)
STATE FARM FLORIDA INSURANCE COMPANY, Appellant,
v.
Arnold A. ONDIS and Colleen F. Ondis, Appellees.
No. 1D06-3876.
District Court of Appeal of Florida, First District.
May 14, 2007.
Guy E. Burnette, Jr., P.A., Tallahassee, and Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami, for Appellant.
James F. McKenzie and Jack E. De La Piedra of McKenzie, Zarzaur & Hall, P.A., Pensacola, for Appellees.
*924 WOLF, J.
Appellant, State Farm Florida Insurance Company, challenges a summary judgment entered in favor of its insured homeowner. Appellant raises a number of issues on appeal. We affirm as to all issues, but we specifically address only one in this opinion: Whether appellees presented competent, unrefuted evidence to establish the total loss of their home under Florida Law warranting summary judgment in their favor. Because we find that the undisputed material facts establish that appellees' house was an actual total loss, we affirm. We also certify to the Florida Supreme Court the same question which we certified in Florida Farm Bureau Casualty Insurance Co. v. Cox, 943 So.2d 823 (Fla. 1st DCA 2006).
On or about September 16, 2004, appellees' home in Gulf Breeze, Florida, was damaged by wind and flood during Hurricane Ivan. At the time the damage occurred, appellees' home was covered by a homeowner's policy issued by appellant. According to the policy, damage caused by flood was not a covered peril, while damage caused by wind was covered under the provisions of the policy. Both parties concede that appellees' home sustained substantial damage from flood in the amount of $322,601.88 and that the damage attributable to wind was in the amount of $14,073.65.
Section 627.702, Florida Statutes (2004), also know as Florida's Valued Policy Law (VPL), reads as follows:
(1) In the event of the total loss of any building, structure, mobile home as defined in s. 320.01(2), or manufactured building as defined in s. 553.36(12), located in this state and insured by any insurer as to a covered peril, in the absence of any change increasing the risk without the insurer's consent and in the absence of fraudulent or criminal fault on the part of the insured or one acting in her or his behalf, the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
In Mierzwa v. Florida Windstorm Underwriting Ass'n, the Fourth District Court of Appeal recently characterized the VPL as follows:
The meaning of the VPL is simple and straightforward. There are two essentials in the statute. The first is that the building be "insured by [an] insurer as to a [e.s.] covered peril." § 627.702(1). The second is that the building be a total loss. If these two facts are true, the VPL mandates that the carrier is liable to the owner for the face amount of the policy, no matter what other facts are involved as to the cost of repairs or replacement.
877 So.2d 774, 775 (Fla. 4th DCA 2004) (emphasis added).
Section 627.702(1), Florida Statutes, is triggered only when an insured building is rendered a "total loss" as defined by Florida courts. § 627.702(1), Fla. Stat. Thus, in order for appellees' claim to fall within the scope of section 627.702(1), appellees must first establish that there was a "total loss" of an insured building. Greer v. Owners Ins. Co., 434 F.Supp.2d 1267, 1279 (N.D.Fla.2006).
In support of their contention that the home was a "total loss," appellees presented evidence to support their claim of constructive total loss in the form of an affidavit from a public adjuster which stated:
[T]he Property at issue in this case . . . is a total loss because the costs of repair to the structure would exceed the value of the structure. The structure is also a *925 total loss because the costs of repair and compliance with the current building code would exceed the value of the structure.
Appellee also presented photographs which, undisputedly, accurately reflect the state of appellee's property after the damage from the hurricane. The photos show that the second story of the home was resting on its foundation.
Appellant argues that Florida case law provides two standards for determining a total loss: (1) the actual total loss standard, and (2) the constructive total loss standard. Appellant argues that the affidavit offered by appellees in support of their assertion that the home was a total loss does not "conclusively" establish that appellees' dwelling was either an actual or constructive total loss.
To the contrary, appellees argue that this affidavit is sufficient to prove the home is a constructive total loss. Alternatively, appellees argue that the condition of the two-story house after the storm, with its top floor lying on the slab where the first floor had been, would be enough to pass the "identity test" found in Lafayette Fire Insurance Co. v. Camnitz, 111 Fla. 556, 149 So. 653, 654 (1933), rendering the house an actual total loss. Appellees further argue that appellant provided no evidence to the trial court to rebut the affidavit offered by appellees stating that the property was a total loss. Appellant merely stated that the affidavit was "irrelevant" and did not "comport with the Florida standard for total loss."
In Lafayette, 149 So. at 654, the supreme court approved a jury instruction which stated a building is considered an actual total loss when it no longer retains its identity and the specific characteristics which define it as a building. See also Greer, 434 F.Supp.2d at 1279. In addition to the "identity test" set out in Lafayette, a building is considered a constructive total loss when the building, although still standing, is damaged to the extent that ordinances or regulations in effect prohibit or prevent the building's repair, such that the building has to be demolished. See Netherlands Ins. Co. v. Fowler, 181 So.2d 692, 693 (Fla. 2d DCA 1966); Citizens Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722, 723 (1929).
Applying the actual total loss standard set out in Lafayette to the facts of this case, appellees' home does fall within the meaning of an actual total loss because the photographs in the record undisputedly establish that, after the hurricane damage, the home no longer retained its identity and the specific characteristics which defined it as a building.
Further, there is no dispute that the cost to repair the home exceeds the value of the home. While Lafayette and Netherlands Insurance Co. establish two ways in which an insured can prove total loss, there is nothing in Lafayette or Netherlands Insurance Co. to preclude application of other reasonable definitions of total loss. We find that a reasonable factor for the trial court to consider in determining whether a total loss has occurred is whether the cost to repair the home exceeds the home's value. Indeed, other states have adopted this as the test for total loss. See Dickler v. CIGNA Property & Cas. Co., 957 F.2d 1088, 1097 (3d Cir.1992) (explaining that if the costs to repair a fire-damaged building exceed 50% of the building's value, the building is considered a total loss and the insured is entitled to a 100% recovery); Dumond v. Mobile Ins. Co., 309 So.2d 776, 778 (La.Ct.App.1975) (explaining that "[t]he test for determining whether damaged property is a total loss is whether the cost of repairs exceeds the value of the property"); Scott v. Transport Indem. Co., 513 So.2d 889, 895 (Miss.1987) (stating "[u]nless provided otherwise by *926 . . . contract, total loss occurs when it is not economically feasible that the property be repaired"i.e., "a total loss occurs when the cost of repairs exceeds the fair market value of the property less salvage value").
The trial court was free to make a determination of total loss based on all the evidence in the record, including the pictures taken of the home after the hurricane.
As to the issue presented concerning applicability of the VPL statute raised on appeal, we certify the same question certified by this court in Florida Farm Bureau Casualty Insurance Co., 943 So.2d at 823, as a question of great public importance:
DOES SECTION 627.702(1), FLORIDA STATUTES (2004), REFERRED TO AS THE VALUED POLICY LAW, REQUIRE AN INSURANCE CARRIER TO PAY THE FACE AMOUNT OF THE POLICY TO AN OWNER OF A BUILDING DEEMED A TOTAL LOSS WHEN THE BUILDING IS DAMAGED IN PART BY A COVERED PERIL BUT IS SIGNIFICANTLY DAMAGED BY AN EXCLUDED PERIL?
VAN NORTWICK, J., concurs; BARFIELD, J., concurs with opinion.
BARFIELD, J., concurs.
I concur with the majority opinion; however, I agree with Judge Polston's dissent in Florida Farm Bureau Casualty Insurance Co. v. Cox, 943 So.2d 823 (Fla. 1st DCA 2006).