966 So.2d 486 (2007)
CITIZENS PROPERTY INSURANCE CORPORATION, Appellant/Cross-Appellee,
v.
Earl MANNING and Mary Powell Manning, Appellees/Cross-Appellants.
No. 1D06-5317.
District Court of Appeal of Florida, First District.
October 15, 2007.
G. Alan Howard and Robert M. Dees of Milam, Howard, Nicandri, Dees & Gillam, P.A., Jacksonville, and John A. Unzicker, Jr., and Michelle Hendrix of Vernis & Bowling of NW Fla., P.A., Pensacola, for Appellant/Cross-Appellee.
J. Nixon Daniel, III and Terrie L. Didier of Beggs and Lane, Pensacola, for Appellees/Cross-Appellants.
BENTON, J.
Citizens Property Insurance Corporation (Citizens) appeals the summary judgment entered against it in the wake of Hurricane Ivan's destruction of its insureds' house on September 16, 2004. The *487 record left no doubt that wind contributed to the total loss of the Mannings' home, but was unclear as to what damage wind alone caused. On the basis of Florida Farm Bureau Casualty Insurance Co. v. Cox, 32 Fla. L. Weekly S564, ___ So.2d ___, 2007 WL 2727072 (Fla. Sept. 20, 2007), a decision that came down after the trial court ruled, we reverse and remand for further proceedings.
The trial court awarded the Mannings policy limits under both the policy's wind damage to dwelling provision and under a separate provision for debris removal. At least as regards the dwelling coverage, the trial court relied upon the interpretation of the 2004 version of Florida's Valued Policy Law (VPL), § 627.702(1), Fla. Stat. (2004), then extant, ruling that Citizens owed the face amount of the policy because wind had contributed to a total loss of their house.[1] On the authority of the supreme court's recent decision in Florida Farm Bureau, we reverse this ruling and remand for further proceedings. See also Ceballo v. Citizens Prop. Ins. Corp., 32 Fla. L. Weekly S566, ___ So.2d ___, 2007 WL 2727092 (Fla. Sept. 20, 2007).
The judgment under review rests on a factual premise-that wind contributed to the total loss of the Mannings' house that is not in genuine dispute,[2] and on a legal premisethat the VPL required payment of policy limits on that accountthat our supreme court has now repudiated. See Fla. Farm Bureau, 32 Fla. L. Weekly at S565, at ___ (holding that the VPL "does not establish any requirement for an insurer to pay for excluded or noncovered perils" identified by a windstorm policy as such). The policy controls, not the VPL. Here Citizens' policy excludes coverage for loss caused directly or indirectly by "water damage," which includes "flood, surface water, waves, tidal water, storm surge, wave wash, or total wave, overflow of a body of water, or spray from any of these, whether or not driven by wind," and, except in certain circumstances, even wind-driven rain. The policy also contains an anti-concurrent cause clause, providing that losses to which excluded perils contribute are "excluded regardless of any other cause or event contributing concurrently or in any sequence." The record before us does not identify which damage to the house was done by wind alone, or the amount of any such damage.
Conceding that the supreme court's decision in Florida Farm Bureau undercuts the stated rationale for summary judgment in the present case, the Mannings argue that summary judgment should nevertheless *488 be affirmed, because the record contains no evidence showing that damage from any excluded peril exceeded what the Mannings' flood insurance has paid them. See, e.g., Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). They acknowledge that the burden rests with the insured, as an initial matter, to prove coverage for a claim under an insurance policy. See East Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So.2d 673, 678 (Fla. 3d DCA 2005); see also Exhibitor, Inc. v. Nationwide Mut. Fire Ins. Co., 494 So.2d 288, 289 (Fla. 1st DCA 1986) ("In a suit to recover under an insurance policy, the insured must prove that the loss did occur and that it was within the coverage of the policy."). They contend they met their burdenand that the record establishes a prima facie showing beyond dispute; that the burden then shifted to Citizens to prove what portion of the Mannings' loss, if any, arose from a cause or causes excluded from coverage under the policy; and that there is no proof that any damage they sustained is attributable to an excluded cause, except for the water damage for which the flood insurer paid. See East Fla. Hauling, 913 So.2d at 678; Exhibitor, 494 So.2d at 289.
Because the record does not establish that wind alone caused damage that exceeded the deductible, however, the Mannings' "tipsy coachman" argument must fail. The record does contain an uncontroverted engineer's affidavit to the effect that wind, wind-driven rain, and storm surge combined to destroy the Mannings' home (and other evidence values the house at considerably more than the sum of the face amount of Citizens' policy and the flood insurance proceeds), but the record is devoid of evidence establishing the amount of damage caused solely by wind.[3] The Mannings never even alleged that the amount of damage attributable to wind alone exceeded the policy deductible. Since the record does not establish this threshold fact, it is not clear that the Mannings are entitled to recover anything or that the burden to prove an exclusion will ever shift to Citizens.
On motion for summary judgment, "if the record raises the slightest doubt that material issues could be present, that doubt must be resolved against the movant and the motion for summary judgment must be denied." Cohen v. Vining, 917 So.2d 1013, 1014 (Fla. 1st DCA 2006) (quoting Jones v. Directors Guild of Am., Inc., 584 So.2d 1057, 1059 (Fla. 1st DCA 1991)). Because the Mannings failed to make a prima facie showing of coverage under the windstorm policy as construed in conformity with Florida Farm Bureau, *489 they did not demonstrate the essential prerequisite to summary judgment, the absence of any genuine issue of material fact.
Finally, we also reverse the trial court's award under the supplemental provision of the policy providing coverage for debris removal. The trial court awarded the Mannings policy limits for debris removal, even though the costs they incurred (and for which they sought reimbursement) were less. The Mannings correctly concede that, under Ceballo, they are not entitled, under any circumstances, to recover more than the debris removal expenses they actually incurred. See Ceballo, 32 Fla. L. Weekly at S567, at ___.
Reversed and remanded for further proceedings.
HAWKES and THOMAS, JJ., concur.
NOTES
[1] The Fourth District had concluded in Mierzwa v. Fla. Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004), disapproved in Fla. Farm Bureau Cas. Ins. Co. v. Cox, 32 Fla. L. Weekly S564, ___ So.2d ___, 2007 WL 2727072 (Fla. Sept. 20, 2007), that the 2004 version of the VPL required that, "if the insurance carrier has any liability at all to the owner for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy," 877 So.2d at 775-76, any contribution by excluded perils notwithstanding. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (holding that, absent interdistrict conflict, a trial court must follow any district court's decision on the same point). We later adopted this view as our own. See Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So.2d 823 (Fla. 1st DCA 2006), quashed, 32 Fla. L. Weekly S564, ___ So.2d ___, 2007 WL 2727072 (Fla. Sept. 20, 2007). See also Citizens Prop. Ins. Corp. v. Ueberschaer, 956 So.2d 483, 487-88 (Fla. 1st DCA 2007) (holding that the 2004 version of the VPL trumped Citizens' enabling legislation, requiring Citizens to pay policy limits where wind contributed to the total loss of a structure, even if wind did not cause the entire loss).
[2] Citizens does argue that there "is a question of fact whether the amount of wind damage, if any, exceeded the deductible."
[3] The engineer's affidavit explicated his opinion that, while wind undoubtedly contributed to the destruction of the house, wind acted in combination with other forces, and that the precise effects of wind alone were difficult, if not impossible, to ascertain from the rubble:

It is an arduous task to determine the failure mode of a structure when it lies in front of you. It is bordering on clairvoyance to state with certainty a particular mode of failure when you don't even have the ability to examine the structure because it has been removed.
We all understand that a hurricane is a very complex and violent set of variables and is highly unpredictable at best. Therefore I am not prepared to say with any degree of certainty that the failure of this structure was due to a single source. To the contrary, I think this failure was caused by a whole series of events that will never be established for certain. I also think that to rule out the effects of hurricane force winds contributing to failure of this structure is simplistic and naive.