KAHN, J.
In this wind insurance claim case, a jury awarded policy limits to the Hamiltons, whose mobile home was destroyed by Hurricane Ivan. Appellant Citizens Property Insurance Corp. (Citizens) raises numerous points; we focus upon the following: (1) the exclusion of evidence that flooding caused the total loss of the insured properties, including evidence that the Hamiltons also had a flood insurance policy from which they recovered policy limits; (2) the admission into evidence of the county’s “substantial damage” determination; (3) the trial court’s failure to give appellant’s proposed jury instructions, including the contention that the court erred in failing to instruct the jury on the total loss recovery rule; and (4) an award of prejudgment interest on unpaid damages from the date of the loss. We affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

As of September 2004, appellees William and Cynthia Hamilton lived in a mobile home on Blackwater Bay, in Milton, Florida. Owing to the home’s location in a flood zone, appellees obtained an insurance policy from the National Flood Insurance Program (NFIP), insuring the residence and its contents against flood loss. The Hamiltons also purchased an insurance policy from Citizens, a statutorily created insurer of last resort authorized to write insurance in Florida. The Citizens policy insured the home, its contents, and other on-site properties against loss caused by certain named perils, including windstorm. Conversely, the Citizens policy excluded coverage for losses caused by water damage, such as resulting from flood, waves, tidal water, and overflow. An anti-concurrent cause (ACC) clause in the policy stated that loss caused directly or indirectly by an excluded peril “is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.”
On September 16, 2004, storm surge and wave action from Hurricane Ivan washed away the Hamiltons’ home, as well as out buildings described as a rabbit coop and metal garage. After appellees submitted a claim under the flood policy, adjusters inspected the property to make payment recommendations to the NFIP, set forth in a Flood Narrative and Final Report. In conjunction with the claim, NFIP provided the Hamiltons with a contents form, which listed separate columns for damage caused by flood or, alternatively, by wind. Appel-lees prepared and submitted the form, fist-ing all items as damaged by flood. Mr. Hamilton also returned a sworn proof-of-loss, swearing that he was claiming under the policy for the full value of the home and its contents, based on the “flood loss” of September 2004. NFIP accepted the adjusters’ recommendation to pay full policy limits for the loss, issuing to the Hamil- *750 tons checks of $63,700 (dwelling coverage) and $31,000 (contents).
The Santa Rosa County Building Inspection Department issued to appellees a notice of determination of “substantial damage,” stating that the Hamiltons’ dwelling had sustained damages exceeding 50 percent of its pre-damage value “as the result of the flooding related to Hurricane Ivan.” Rather than undergo the expense to rebuild the home in compliance with floodplain regulations requiring elevation of the lowest floor to or above the 100-year flood elevation, appellees instead placed the land up for sale.
The Hamiltons thereafter presented a claim for total loss of them home under the windstorm policy issued by Citizens. Like NFIP, appellant sent an adjuster to inspect the property and determine the extent of the insurer’s liability. The adjuster concluded that only tree damage to the roof of the garage had been caused by wind. A supplement to the resulting report recommended payment of $6,370 for wind damage, which Citizens subsequently paid to appellees.
The Hamiltons then filed suit against Citizens, seeking to recover full policy limits. The complaint alleged that the Hamil-tons’ dwelling was insured against losses caused by windstorm by a “valued policy” subject to section 627.702, Florida Statutes (2004). Appellees advanced the claim on the strength of Mierzwa v. Florida Windstorm Underwriting Association, which (incorrectly) interpreted the Valued Policy Law (VPL), section 627.702, Florida Statutes (2004), to allow an insured whose dwelling sustained a total loss by combination of wind and flood to recover the entire policy limits under a wind-only policy if the insured could prove that any part of the total loss was attributable to wind. See 877 So.2d 774 (Fla. 4th DCA 2004), superseded by statute, § 627.702(1)(b), Fla. Stat. (2005), as recognized in Fla. Farm Bureau Cas. Ins. Co. v. Cox, 967 So.2d 815, 821 (Fla.2007).
Citizens moved for partial summary judgment, arguing plaintiffs’ recovery under the windstorm policy should be limited to the pre-storm value of their home, less payments received from NFIP. Appellant filed a second motion for partial summary judgment, asserting that any damages payable under the policy must be based on actual cash value, pursuant to the policy provision that provides for actual cash value when the damaged property is not actually repaired or replaced. Citizens also moved in limine to exclude evidence regarding Santa Rosa County’s substantial damage rule. The trial court denied or deferred ruling on Citizens’ motions, but granted the Hamiltons’ motion in limine to bar evidence of the amount of flood carrier payments and estimates.
The parties’ trial experts offered conflicting opinions on whether the mobile home sustained anything more than minor wind damage before being inundated and washed away by storm surge. Mark Spitznagel, a professional engineer and general contractor, testified for the Hamil-tons:
[T]he majority of the damage was caused by the high winds and the storm surge just washed away what was left of the house. The house would have been substantially damaged well before the storm surge would have washed away the debris or toppled over what was left if it hadn’t been toppled over already.
Spitznagel estimated the cost of a replacement home at $120,000, including the expense to elevate the unit as required by the floodplain regulations. Conversely, James Phillip Wilbourn, II, a licensed structural engineer, offered his expert opinion on behalf of Citizens:
*751 Basically, the mobile home would not have sustained any significant damage prior to the storm surge reaching the ... home and causing damage. By the time the winds clocked around to an angle where they would be impacting the [structure] directly, the storm surge was already about 2.6 feet above the floor line of the ... home, and it only takes about a foot of water depth ... in order to cause [the structure] to float up off of its foundation....
Upon submission of an interrogatory verdict form, the jury found that wind caused a total loss of the Hamiltons’ home and awarded damages of Citizens’ policy limits. The jury also determined that the garage and rabbit coop sustained damage due to windstorm, assigning damage amounts for the out structures based on instructions that the Citizens policy provided for payment of losses on the basis of replacement cost.
The trial court rendered a final judgment in accordance with the jury verdict, subject to an offset in the amount previously paid for wind damage. Over appellant’s objection, the court awarded prejudgment interest on the entire damages award from the date of the loss.

ANALYSIS

We review a trial court’s evidentia-ry rulings, in the context of the entire trial, for abuse of discretion. See H & H Elec., Inc. v. Lopez, 967 So.2d 345, 347 (Fla. 3d DCA 2007). Citizens challenges first the court’s ruling on the Hamiltons’ motion in limine, upon consideration of which the court resolved to allow appellant to reference the flood coverage, the flood damage, and the flood loss claim, except as to dollar amount. Citizens contends that these representations, in addition to a letter from trial counsel acknowledging full payment of the Hamiltons’ “total loss” flood claim, are admissible as statements against interest, pursuant to section 90.803(18), Florida Statutes (2003). Appellees respond that such evidence is irrelevant and barred by the common law collateral source rule.
The collateral source rule is a doctrine prohibiting “both the introduction of evidence of collateral insurance benefits received, and the setoff of any collateral source benefits from the damage award.” Rollins v. Pizzarelli, 761 So.2d 294, 300 (Fla.2000) (citing Gormley v. GTE Prods. Corp., 587 So.2d 455, 457-59 (Fla.1991)). In accordance with this district’s precedent, we apply the collateral source rule to causes of action in contract, as well as to actions in tort. See Rease v. Anheuser-Busch, Inc., 644 So.2d 1383, 1387 n. 3 (Fla. 1st DCA 1994) (citing Hartnett v. Riveron, 361 So.2d 749, 751 (Fla. 3d DCA 1978)) (providing that “in a tort or contract action total or partial compensation received by the plaintiff ... from a collateral source wholly independent of the defendant wrongdoer will not operate to lessen the damages otherwise due ... ”); Bangert v. Beeler, 470 So.2d 817, 818 (Fla. 1st DCA 1985); Walker v. Hilliard, 329 So.2d 44, 45 (Fla. 1st DCA 1976) (applying collateral source doctrine to action for breach of warranty of title, because “[t]o hold otherwise would permit a wrongdoer to benefit from a policy of insurance when there is no privity between him and the insurance company, and the policy was written for the benefit of the insured, not for the wrongdoer”).
As applied, the common law collateral source rule militates against evidence of the dollar amount of flood insurance payments, disbursed by an entity wholly independent of appellant, under a plainly distinct contractual obligation, and paid for entirely by premiums remitted by the Hamiltons. Accordingly, we find no abuse of discretion in the ruling on this matter. *752 In reaching this conclusion, we do not minimize appellant’s interest in presenting evidence to rebut the Hamiltons’ claim that wind caused the total loss of the home. Generally, however, “there ... will be other evidence having more probative value and involving less likelihood of prejudice than the victim’s receipt of insurance-type benefits.” Williams v. Pincombe, 309 So.2d 10, 11 (Fla. 4th DCA 1975). Here, the trial court blocked appellant only from admitting the dollar amount of flood insurance payments and estimates, leaving Citizens free to reference the existence of the Hamiltons’ flood insurance policy, the Hamiltons’ submission of a flood claim, and the flood carrier’s resulting adjustment of that claim, as well as the physical damage caused by flood. One of the flood adjusters specifically testified concerning preparation of an estimate for repair or replacement of the dwelling. Also Citizens had wide latitude to attempt proof through expert testimony that the loss came about entirely from flood.
Cases recognizing the collateral source rule as a rule of evidence “reason that introduction of [such] evidence misleads the jury on the issue of liability and, thus, subverts the jury process.” Gormley, 587 So.2d at 458. This entire matter turned upon the related issues of whether the Hamiltons’ mobile home was a total loss and, if so, whether the covered peril (wind) caused the loss. The extent to which a different insurance carrier paid out claims for damage caused by a different peril could reasonably be expected to muddle the issues properly before the jury, if not raise the specter of “unfair prejudice.” See § 90.403, Fla. Stat. (2009). We would rarely disturb an evidentiary determination to which the law has committed such discretion. See Owen v. Crosby, 854 So.2d 182, 191 (Fla.2003) (recognizing that “a large measure of discretion rests in the trial judge to determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect”); Webster v. Body Dynamics, Inc., 27 So.3d 805, 809 n. 12 (Fla. 1st DCA 2010) (affording “substantial discretion to trial courts to exclude otherwise relevant evidence” pursuant to section 90.403); Children’s Palace, Inc. v. Johnson, 609 So.2d 755, 757 (Fla. 1st DCA 1992) (according “great deference” to “[a] trial court’s determination under section 90.403”).
The Legislature, through years of experience, assuredly knows how to abrogate the collateral source rule, and indeed has done so, albeit in an incremental manner. See, e.g., § 627.736(3), Fla. Stat. (2009) (precluding insured motorist from recovering “damages for which personal injury protection benefits are paid or payable”); § 768.76(1), Fla. Stat. (2009) (providing for reduction in the amount of damages awarded to personal injury claimant “by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources”). In this matter, under the statute in effect at the time of the loss, the common law collateral source rule had not been legislatively altered. See § 627.702(1), Fla. Stat. (2004).
Appellees also raise a credible argument that neither their statements nor those of the adjusters reached a sufficient level of competence. The Hamiltons, faced with a devastating loss of property, and lacking any expertise, merely filled out proof-of-loss forms presented to them. The adjusters likewise had little or no expertise, having attended only a one-day course on flood loss. “To be legally relevant, evidence must pass the tests of materiality (bearing on a fact to be proved), competency (being testified to by one in a position to know), and legal relevancy (having a tendency to make the fact more *753 or less probable) and must not be excluded for other countervailing reasons.” Sims v. Brown, 574 So.2d 131, 134 (Fla.1991).
We turn our attention next to appellant’s proposed jury instructions and, by extension, the admissibility of the county’s substantial damage determination, which appellees introduced to prove that wind caused a constructive total loss of their mobile home before flood surge washed away the remains. We review a trial court’s decision to give or withhold a jury instruction for abuse of discretion. See Barbour v. Brinker Fla., Inc., 801 So.2d 953, 959 (Fla. 5th DCA 2001). Citizens argues that an instruction on constructive total loss is unwarranted where, as here, the dwelling was plainly an actual total loss. As a result, appellant concludes, the substantial damage determination was not relevant to prove a material fact in issue.
A building is considered an actual total loss, under the identity test, if it “has lost its identity and specific character as a building, and becomes so far disintegrated, it cannot be possibly designated as a building, although some part of it may remain standing.” Lafayette Fire Ins. Co. v. Camnitz, 111 Fla. 556, 149 So. 653, 654 (1933). “[A] building is considered a constructive total loss when the building, although still standing, is damaged to the extent that ordinances or regulations in effect prohibit or prevent the building’s repair, such that the building has to be demolished.” State Farm Fla. Ins. Co. v. Ondis, 962 So.2d 923, 925 (Fla. 1st DCA 2007), rev’d on other grounds, 979 So.2d 930 (Fla.2008).
Although Citizens argues in hindsight that the mobile home was a total loss by any definition, Citizens did not concede this point at trial-the interrogatory verdict form used in this case asked the jury to determine whether “damages caused by ... wind ... rendered] the Hamilton mobile home either a total loss or a constructive total loss[.]” Contrary to appellant’s contention, if an ordinance requires the remains of a structure to be torn down and the site elevated, the ordinance is said to “prohibit or prevent” repair. See Mierzwa, 877 So.2d at 776-77 (finding structure was a constructive total loss where ordinance allowed repair, but required elevation first), disapproved on other grounds by Cox, 967 So.2d at 821. Here, the trial court did not give the constructive total loss instruction in error because the substantial damage determination required demolition of the Hamiltons’ home, to allow for elevation in conformity with flood plain regulations. As a corollary, evidence of the substantial damage determination was entirely relevant to prove a constructive total loss. See Citizens Prop. Ins. Corp. v. Ueberschaer, 956 So.2d 483, 487-88 (Fla. 1st DCA 2007) (holding home that sustained damage during hurricane was a total loss because of building official’s determination that structure had to conform to building code rules in effect when repairs were made), rev’d on other grounds, 979 So.2d 929 (Fla.2008).
Assuming arguendo Citizens could show error in the admission of this evidence, no prejudice is apparent. We find no reasonable probability that the substantial damage determination — attributing the loss to flood — influenced the jury’s determination on the key issue in this case— causation. See Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979) (holding “error [in a civil matter] is reversible only when, considering all the facts peculiar to the particular case under scrutiny, it is reasonably probable that a result more favorable to the appellant would have been reached if the error had not been committed”).
*754 Next, Citizens claims the trial court erred in declining a proposed jury instruction on the insured’s burden to prove damages caused solely by wind. In relevant part, Citizens requested the following instruction:
William and Cinthia [sic] Hamilton’s policy issued by Citizens excludes any loss caused directly or indirectly by and of water damage. This loss is excluded under the policy regardless of any other cause or event contributing concurrently or in any sequence to the loss.
[[Image here]]
Accordingly, you are instructed that you cannot render any award for any loss caused by flooding or storm surge under the Citizens policy.... William and Cinthia [sic] Hamilton must prove what damage to their trailer and other structures was caused by wind alone versus what damage was caused in conjunction with any other cause or event acting concurrently or in any sequence with wind.
In so proposing, Citizens argues that the policy’s ACC clause. — denying coverage for a loss caused directly or indirectly by an excluded peril — controls where wind and flood combine to cause a total loss. See Citizens Prop. Ins. Corp. v. Manning, 966 So.2d 486, 487 (Fla. 1st DCA 2007) (requiring insured under such circumstances to prove “which damage ... was done by wind alone” and “the amount of any such damage”).
We must consider whether the instructions, as a whole, accurately conveyed the law. See Grimm v. Prudence Mut. Cas. Co., 243 So.2d 140, 143 (Fla.1971) (stating that “the merits of instructions will be judged by an examination of the complete charge and if, as a whole, the law is fairly stated the portions singled out for attack will avail the appellant nothing”). The trial court instructed the jury:
To establish their claim, the Hamiltons have the burden to prove by the greater weight of the evidence their property sustained losses as a result of wind. Under Florida law and under the insurance policy Citizens is obligated to pay the Hamiltons for all loss to their insured property caused by wind-related damage and is not required to pay for loss caused by excluded perils such as water damage....
We observe that the instruction as given reproduces in all substantively material respects the instruction as Citizens proposed it. Citizens desired an instruction requiring the Hamiltons to “prove what damage ... was caused by wind alone.” The court ultimately instructed the jury (1) that ap-pellees shouldered the burden to prove losses “sustained ... as a result of wind” and (2) that Citizens would not be hable for “loss caused by excluded perils such as water damage.... ”
By the first part of this charge the court conveyed that the Hamiltons should be compensated for only wind damage; by the latter, the trial court affirmed that flood damage would not be compensable at ah. Importantly, the court did not in any way impede appellant’s counsel during closing argument from urging the jury to reject the claim of wind loss. Counsel told the jury to, “decide here ... what damages did wind cause, damages that were not excluded. That is my burden ... to prove to you by a preponderance of the evidence, just as it was [plaintiffs’] initial burden ... to show that the damages ... were caused by wind.” See Lundberg, 379 So.2d at 966 (requiring appellant to show that error complained of was harmful, or that “it is reasonably probable that a result more favorable to the appellant would have been reached if the error had not been committed”). Moreover, the Manning rule upon which Citizens relies is *755 inoperative, where, as here, the jury triggers the VPL by a finding that a covered peril alone caused a total loss. See Cox, 967 So.2d at 821 n. 6 (holding VPL applies where damages caused by covered peril result in actual or constructive total loss).
We also note that the rejected instruction included a significantly broader and more argumentative sweep than mere use of the words “wind alone” (upon which Citizens now focuses). Having examined the charge “as a whole” and concluding that the court “fairly stated” the law, we find no abuse of discretion in the refusal of the proposed instruction. See Grimm, 243 So.2d at 143.
We consider next appellant’s contention that the trial court abused its discretion in failing to instruct the jury to apply the “total loss recovery” rule. The total loss recovery rule is a theory of damages based on indemnity principles, limiting an insured’s recovery as between two or more insurers to the pre-loss value of the subject structure. See, e.g., Lambert v. State Farm Fire and Cas. Co., 568 F.Supp.2d 698, 703 (E.D.La.2008) (holding that insured was “ ‘entitled to recover ... any previously uncompensated losses that are covered by [her] homeowner’s policy and which when combined with [her] flood proceeds do not exceed the value of [her] property ’ ”) (quoting Esposito v. Allstate Ins. Co., No. 06-1837, 2007 WL 1125761, at *2 (E.D.La. Apr. 16, 2007)).
Citizens, however, cites no binding authority recognizing such a rule. Appellees, on the other hand, point to ease law suggesting that Florida’s property insurance law does not begrudge the Hamiltons their recovery in this matter. In rejecting an indemnity-based theory of insurance, upon which the total loss recovery rule is largely patterned, this court observed that “a [wind] insurance policy is a contract to insure against [wind] loss, and its premiums are assumed to represent the fair equivalent of the obligation contracted for by the insurer without knowledge of the existence of collateral remedies.” Rutherford v. Pearl Assurance Co., 164 So.2d 213, 214 (Fla. 1st DCA 1964). Indeed, we have expressed various iterations of this principle and believe it to be the correct one. See Fla. Farm Bureau Cas. Ins. Co. v. Mathis, 33 So.3d 94 (Fla. 1st DCA 2010) (approving recovery for wind damage of full limits on homeowner’s policy, pursuant to VPL, where plaintiffs were also paid limits less deductible on flood insurance policy); Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 784 (Fla. 1st DCA 1964) (holding “[e]ach insurer is liable for the full amount of his policy” “[w]hen there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises”); see also Millers’ Mut. Ins. Ass’n of Ill. v. La Pota, 197 So.2d 21, 24 (Fla. 2d DCA 1967) (adopting First District’s precedent in Boswell).
A fiscally prudent insurer will surely derive its premium in consideration of the statutorily-mandated exposure of maximum risk under the VPL. See Boswell, 167 So.2d at 784 (reasoning that VPL does not pose “an unfair scheme, as the insured is stating the limits of his recovery ... at the same time the insurer is basing his premium charges on the extent of his maximum exposure”). Accordingly, where the covered peril causes a total loss, the insurer has no equitable plea to reap a windfall from, in effect, a total set-off for unrelated insurance payments. See Gormley, 587 So.2d at 457 (arguing that there is no “double recovery” under such circumstances “because the plaintiff may have paid substantial premiums over a long span of time without ever having received benefits”). We cannot but observe that appellant asks here to collect its premium, *756 see its insured endure a total loss from a covered peril, and then come up with a claim value of little or nothing, simply because the flood insurer made prompt payment under exigent circumstances, following a catastrophic loss. Of course, whether NFIP has any claim back against the Hamiltons is not encompassed by this appeal.
That the Legislature in 2005 amended the VPL to incorporate the spirit of the total loss recovery rule further supports our conclusion that this doctrine was not previously part of our canon of common law. See § 627.702(1)(b), Fla. Stat. (2005) (providing that “[t]he insurer is never liable for more than the amount necessary to repair, rebuild, or replace the structure following the total loss, after considering all other benefits actually paid ... ”)• In light of these decisions and the subsequent amendment to the VPL, we find no error in the court’s refusal to apply the total loss recovery rule.
Appellant cites a final defect in the jury instructions, claiming error in the instruction that damages were to be measured by replacement cost value. The Citizens policy provides for payment of no more than the actual cash value of any damages, unless:
(a) actual repair or replacement is complete; or (b) the cost to repair or replace the damage is both: (i) less than 5% of the amount of insurance in this policy on the building; and (ii) less than $2,500.
Over appellant’s objection, the court instructed the jury that “[ujnder the terms of the insurance policy ... damages should be the amount of money necessary to repair or replace the damaged items.”
Appellees, who opted to sell their storm-swept parcel rather than repair the structures thereon, did not qualify under either policy provision to receive anything more than actual cash value for their losses. As related to the mobile home, the total loss of which placed it under the VPL, Citizens cannot show that the error was harmful: Once the jury found a total loss caused by wind, damages were fixed by statute. See § 627.702(l)(a), Fla. Stat.
The jury also found, however, that the other two structures on the property, the garage and the rabbit coop, sustained wind damage. Because neither structure fell within the purview of the VPL, the jury should have been required to calculate the damages to these “other structures.” See § 627.702(5), Fla. Stat. (providing that the VPL does not “apply to coverage of an appurtenant structure or other structure or any coverage or claim in which the dollar amount of coverage available as to the structure involved is not directly stated in the policy ... ”). The jury determined that wind caused $16,000 worth of damage to the garage, and $3,000 to the coop. We will find reversible error where, as here, the court has given an instruction that “reasonably might have misled the jury.” See McPhee v. Paul Revere Life Ins. Co., 883 So.2d 364, 368 (Fla. 4th DCA 2004).
Logically following this conclusion, the trial court also erred in part by awarding prejudgment interest on the entire damages award. “[A] claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date.” Underwriters Ins. Co. v. Kirkland, 490 So.2d 149, 153 (Fla. 1st DCA 1986). The jury here determined that the loss of the mobile home was total and that the Hamiltons were entitled to the full limits of the Citizens policy, thereby fixing damages as of the date of the storm. See id. We thus find no error in the award of prejudgment interest on damages to this structure. As already explained, however, the VPL does *757 not apply to the garage and rabbit coop, damages to which were not fixed as of a prior date. Instead, interest on damages to the “other structures” should have been determined in accordance with the Citizens policy, which allows the insurer 60 days from the date a judgment is entered to make the loss payment. We thus find that the trial court erred in awarding prejudgment interest as to damages for these structures.
We REVERSE the award of damages, including prejudgment interest, for the garage and rabbit coop, and REMAND for a new trial on the issue of damages to those structures. The trial court’s rulings are AFFIRMED in all other respects.
ROWE and MARSTILLER, JJ., concur.