VAN NORTWICK, J.,
concurs, in part, and dissents, in part.
I concur in all parts of the majority opinion except for the reversal of the trial court’s granting of the motion in limine which excluded evidence of flood insurance. Because I conclude that the collateral source rule requires the exclusion of evidence of flood insurance in this case, I find no error in the trial court’s granting the motion. Accordingly, I respectfully dissent as to that issue.
Citizens argues that the claim Ashe made to his flood insurer and the proceeds he received are relevant to the jury’s determination of his damages since the fundamental issue in this case is what peril (wind or flood, or a combination of both) destroyed Ashe’s house. Citizens acknowledges that Ashe did not submit an executed proof of loss because the Federal Emergency Management Agency (FEMA) waived the requirement of a proof of loss in order to expedite claims given the catastrophic nature of Hurricane Ivan. Nevertheless, Citizens contends the fact that Ashe did not sign a proof of loss is not pivotal because he made a claim for flood policy benefits and received them. Citing unreported federal decisions, Preis v. Lexington Insurance Co., 2008 WL 2247140 (11th Cir.2008), and Letoha v. Nationwide Insurance Co., 2007 WL 2059991 (S.D.Miss. July 12, 2007), Citizens asserts that evidence of flood payments is admissi *656 ble and that, when an insured accepts benefits tendered under a flood insurance policy, the insured makes a judicial admission that the insured property sustained flood damage at least equal to the flood insurance benefits that were accepted and therefore is estopped to deny that this amount of flood damage has occurred.
Ashe admits that the extent of flood damage to the structure and other meteorological and scientific evidence relating to the wind and storm surge of the hurricane are relevant in this case. He argues, however, that evidence concerning the existence of flood insurance or the amount of money Ashe received from his flood insurance carrier is irrelevant because that evidence does not tend to prove or disprove any material fact. Further, Ashe contends that receipt of flood insurance policy benefits is inadmissible under the collateral source rule, which allows the injured party to recover the full amount of damages from the wrongdoer, irrespective of any funds the injured party may be entitled to from independent sources.
As the majority opinion notes, our court has recently addressed a trial court’s granting of a motion in limine to bar evidence of the amount of flood insurance payments in a case involving a wind insurance claim arising out of damage caused by Hurricane Ivan. Citizens Property Ins. Corp. v. Hamilton, 43 So.3d 746 (Fla. 1st DCA 2010). In Hamilton, as here, Citizens asserted that the trial court erred in granting Hamilton’s motion in limine, contending, in pertinent part, that the insured’s flood loss claim and the amount paid under the flood insurance policy were admissible as statements against interest under section 90.803(18), Florida Statutes (2003). Hamilton rejected Citizens’ argument, holding that “the common law collateral source rule militates against evidence of the dollar amount of flood insurance payments, distributed by an entity wholly independent of [Citizens], under a plainly distinct contractual obligation, and paid for entirely by premiums remitted by the Hamiltons.” Id. at 751. As the majority opinion states, the trial court in Hamilton allowed the introduction of evidence of a flood insurance policy, but excluded evidence of the proceeds paid under that policy. Hamilton affirmed the trial court’s exclusion of evidence of the payment under the flood insurance policy. Id. The homeowner in Hamilton did not challenge the admission of evidence of the existence of flood insurance and, thus, that issue was not addressed by the Hamilton court. In my view, Hamilton controls the evidentiary issue raised here.
In Gormley v. GTE Prods. Corp., 587 So.2d 455, 457 (Fla.1991), the Florida Supreme Court held that the admission of evidence of a collateral source to reduce damages constitutes reversible error because it prejudices the jury’s determination of liability. The court noted that the collateral source rule functions both as a rule of damages and as a rule of evidence. Id. Citing a long line of cases prohibiting the admission of evidence of collateral sources in a liability trial,[4] id. at 457-58, *657 the Court explained the rationale for the rule, as follows:
[Introduction of collateral source evidence misleads the jury on the issue of liability and, thus, subverts the jury process. Because a jury’s fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise. Evidence of collateral source benefits may lead the jury to believe that the plaintiff is “trying to obtain a double or triple payment for one injury,” or to believe that compensation already received is “sufficient recompense.” Despite assertions that collateral source evidence is needed to rebut or impeach, “there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim’s receipt of insurance-type benefits.”
Id. at 458 (citations omitted). The court concluded that “[gjiven the various ways of properly rebutting and impeaching evidence, it is error to disclose the irrelevant and prejudicial fact of insurance.” Id.
In so ruling, the Gormley court recognized that the legislature had enacted statutes addressing automobile insurance and tort recovery, sections 627.7372 and 768.76,[5] which allowed reduction of the jury’s damages by certain collateral source payments. The court explained that these statutes allow collateral sources to reduce damages, but do not require admission of collateral sources into evidence in the liability portion of the trial. The court stated:
We draw the logical conclusion that the legislature intended neither the admission of privately-obtained insurance benefits into the liability trial, nor the reduction of damages based on these insurance benefits. Here the [Gormleys] paid for insurance against the very loss which occurred. To permit [GTE] to benefit from this prudent act would result in an unearned windfall to [GTE].
Id. at 459.
Similarly in the case before us, allowing Citizens to benefit from Mr. Ashe’s prudent act of purchasing flood insurance could result in an unearned windfall to Citizens. More importantly, Gormley instructs that the legislature is fully capable of addressing issues of collateral sources and, to the extent that the legislature has left in place the common law collateral source rule, it remains applicable. This does not mean, however, that a plaintiff such as Ashe is entitled to a double recovery, because in the event of a duplication of insurance payments, the insurer who has overpaid is entitled to a right of subro-gation. Purdy v. Gulf Breeze Enters., Inc., 403 So.2d 1325, 1328 (Fla.1981). As recognized in the majority opinion, supra at 14, all NFIP policies contain a subroga *658 tion clause. As a result, applying the collateral source rule in this case would allow protection to all the parties. Ashe would have the opportunity to prove his wind damages without being prejudiced by the jury hearing evidence of his recovery against the flood insurer and, if indeed there was overpayment by the flood policy, 44 C.F.R. 61.13, App. A(l) subsection (VII)(S) can be invoked.
Next, I disagree with Citizens’ assertion that the collateral source rule does not restrict the introduction of evidence in this case because the rule does not apply to contract actions. I recognize that the Third District has held that the rule is limited to tort actions. See City of Miami Beach v. Carner, 579 So.2d 248, 253-54 (Fla. 3d DCA 1991) (“the collateral source rule does not apply to pure breach of contract cases”). In Rease v. Anheuser-Busch, Inc., 644 So.2d 1383, 1386 n. 3 (Fla. 1st DCA 1994), however, this court has found that the rule applies in both tort and contract actions. The Rease court explained: “As a general proposition, the collateral source rule states that ‘in a tort or contract action total or partial compensation received by the plaintiff injured party from a collateral source fully independent of the defendant wrongdoer will not operate to lessen the damages otherwise due to the plaintiff from the defendant wrongdoer.’ ” Id. (quoting Hartnett v. Riveron, 361 So.2d 749, 751 (Fla. 3d DCA 1978)). Although jurisdictions are split on the issue, compare, e.g., Hubbard Broadcasting, Inc. v. Loescher, 291 N.W.2d 216, 218 (Minn.1980); and Amalgamated Transit Union Local 1321 v. Roberts, 263 Ga. 405, 434 S.E.2d 450, 452-53 (1993), I see no reason to apply the collateral source rule differently in tort and contract actions. A noted commentator has observed, “the policies underlying the law of contract do not dictate an application of the collateral source rule different from that in tort.” Joseph M. Perillo, The Collateral Source Rule in Contract Cases, 46 San Diego L. Rev. 705, 707 (2009) (quoting John G. Fleming, The Collateral Source Rule and Contract Damages, 71 Cal. L. Rev. 56, 62 (1983)). As Professor Perillo explains:
The collateral source rule has many positive effects in contract cases.... It helps to discourage opportunistic breaches when the breaching party relies on the victim’s insurance or the possibility that a third party, such as a parent corporation, a major shareholder, or a beneficent donor will come to the rescue of the victim of the breach. Moreover, the application of the rule is a premier example of preventing a wrongdoer’s unjust enrichment. Efficient breach theory is not at war with these results: “[T]he contract breaker would be taking advantage of an externality and thus distort the true cost of his reallocation of resources.”
Id. at 711, 434 S.E.2d 450 (quoting Fleming, 71 Cal. L. Rev. at 62 n. 29). Here, I see no rationale to support the reduction of breach of contract damages by the amount of payments that the non-breaching party has received from an insurer to which it paid premiums. Applying the collateral source rule in such a situation prevents the breaching party from receiving the benefits of insurance premiums paid by the non-breaching party.[6] Further, applying the collateral source rule here would allow *659 the jury to perform its proper role by deciding the issues of causation and damages without consideration of improper evidence of other insurance. See, e.g., Florida Farm Bureau Casualty Insurance Co. v. Mathis, 33 So.3d 94 (Fla. 1st DCA 2010); Landry v. Louisiana Citizens Prop. Ins. Co., 964 So.2d 463, 473 (La.App. 3d Cir.2007), vacated in part on other grounds, 983 So.2d 66 (La.2008) (“What forces or causes brought about the total destruction or “constructive total loss” of a structure is a question left for resolution by the fact-fínder. The same is true in answering whether a particular structure sustained a total loss.”).

. "Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982) (reversible error to admit evidence of workers’ compensation benefits in violation of statute); Clark v. Tampa Elec. Co., 416 So.2d 475 (Fla. 2d DCA 1982) (reversible error to admit evidence of plaintiff's income before and after accident; error could not be cured even by repeated instruction), rev. denied, 426 So.2d 29 (Fla.1983); Grossman v. Beard, 410 So.2d 175 (Fla. 2d DCA 1982) (reversible error to admit evidence that plaintiff’s hospital bill was paid by workers’ compensation); Williams v. Pincombe, 309 So.2d 10 (Fla. 4th DCA 1975) (reversible error to admit evidence of plaintiff’s receipt of welfare benefits, even for the purpose of impeaching motive to work); Cook v. Eney [277 So.2d 848 (Fla. 3d DCA 1973) ] (admission of collateral *657 source evidence is reversible error on the issue of liability, despite defendant's assertion that it could affect only the issue of damages); Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543 (Fla. 2d DCA 1963) (error occurred when defense counsel asked whether plaintiff had been compensated by insurance, despite that it was plaintiff who first mentioned insurance; error could not be cured by instruction at close of case); cf. Sosa v. Knight-Ridder Newspapers Inc., 435 So.2d 821, 825 (Fla.1983) (new trial approved where "record supports a conclusion that the jurors were influenced by considerations outside the record [workers’ compensation benefits] which affected their decision”); Calloway v. Dania Jai Alai Palace, Inc., 560 So.2d 808 (Fla. 4th DCA 1990) (failure of court to give requested collateral source instruction resulted in verdict for less than medical expenses and lost wages; new trial on liability required).”

. Section 627.7372 was repealed in 1993 and partially incorporated in section 768.76. Ch. 93-245, §§ 1, 3, Laws of Fla.

. I also found helpful Professor Perillo's discussion of the relationship between the collateral source rule and subrogation:
The presence of the possibility of subrogation is often critical to the application of the collateral source rule. If the collateral source will be subrogated for its payment to the plaintiff, this fact provides a secure basis for application of the collateral source rule. The fact that an insurance company *659 or the government will be subrogated to the plaintiff’s recovery of actual damages rebuts any argument that the plaintiff will reap the reward of double recovery.
* * ⅜
The importance of subrogation is illustrated in Metoyer v. Auto Club Family Insurance Co. [536 F.Supp.2d 664 (E.D.La.2008).] The plaintiff’s property suffered major damage from Hurricane Katrina. The defendant had insured the property against wind damage. The Louisiana Recovery Authority made a grant of $150,000 to the plaintiff. In exchange it would be subrogated pro tanto to plaintiff’s claim against the insurer'. This was held to be a major reason for application of the collateral source rule to the plaintiff's claim against the insurer. By virtue of subrogation, the insured’s recovery against the insurer effectively would be reduced by $150,000. For example, if its insurance policy provided a maximum coverage of $150,000 or less, plaintiff would have had zero incentive to sue its insurer. Indeed, because of the transaction cost of litigation, plaintiff would have an incentive not to sue inasmuch as the insured would be less well off by suing than by not suing. Of course, the state as subrogee could sue.
Joseph M. Perillo, The Collateral Source Rule in Contract Cases, 46 San Diego L. Rev. 705, 719-20 (2009).