# Third District Court of Appeal

## State of Florida

Opinion filed January 14, 2026.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D24-0363
Lower Tribunal No. 18-CA-1089-K

————————

**Danny Kapson and Rose Noelle,**
Appellants,

vs.

**Homeowners Choice Property & Casualty
Insurance Company, Inc.,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Mark Wilson, Judge.

Mintz Truppman, P.A., and Timothy H. Crutchfield, for appellants.

Kelley Kronenberg, and Andrew A. Labbe (Fort Lauderdale), for appellee.

Before SCALES, C.J., and GORDO and GOODEN, JJ.

GOODEN, J.,

After Hurricane Irma destroyed their home, Appellants Danny Kapson and Rose Noelle sought coverage under several policies—a standard hazard policy, a flood policy, and a named-peril (wind only) policy issued by Appellee Homeowners Choice Property & Casualty Insurance Company. The Appellants collected $222,800.00 from the flood carrier without dispute. Homeowners Choice acknowledged that some damage, specifically the roof and trusses, fell within its coverage. It sent payments totaling $38,122.67.[1]

Thereafter, Kapson and Noelle filed suit against Homeowners Choice for breach of contract. They asserted that wind destroyed the home before flooding or storm surge occurred, and therefore, *all* damages were covered. Yet Homeowners Choice asserted that the remaining damages were from flooding and storm surge, which are not covered. The policy contained anti-concurrence cause language. At trial, evidence was admitted that Kapson and Noelle submitted claims, which were paid, to the flood carrier. But the amount of the benefits received was excluded.

Ultimately, the jury found that Kapson and Noelle did not prove by the greater weight of the evidence that the loss was caused by wind and entered

---

[1] Kapson and Noelle have rebuilt their home. It is 345 square feet smaller than their previous home. They paid $310,054.18 for the cost of the structure.

verdict for Homeowners Choice. After post-trial motions were denied, a final judgment was rendered in favor of Homeowners Choice.

On appeal, Kapson and Noelle assert several arguments. Finding none of them meritorious, we affirm in all respects. See Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1031 (Fla. 2000) ("[B]efore a complaining party may receive a new trial based on unobjected-to closing argument, the party must establish that the argument being challenged was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial."); Citizens Prop. Ins. Corp. v. Kings Creek S. Condo, Inc., 300 So. 3d 763, 766 (Fla. 3d DCA 2020) ("Moreover, this is a named perils policy, with wind being the covered cause of loss. After the insured presents evidence of wind related damage, the insurer has the right to challenge that evidence with evidence of non-wind related causes.").

We write briefly to address one issue—admission of evidence regarding the flood claim. In a named-peril policy dispute, the jury can consider evidence that the policyholder made a claim to and received benefits from a different insurer for a peril specifically excluded by the current policy. It is relevant to show that the loss was caused by an excluded peril rather than a covered one. See § 90.401, Fla. Stat. (2022); § 90.402, Fla.

3

Stat. (2022); <u>Citizens Prop. Ins. Corp. v. Ashe</u>, 50 So. 3d 645, 652–53 (Fla. 1st DCA 2010) ("Evidence that such flood insurance benefits were received was relevant to the issue of whether flood or wind caused the total loss of the home, and the trial court abused its discretion in excluding such evidence. Where Ashe now claims that his house was totally destroyed by *wind,* the jury can and should be allowed to hear evidence that he sought and accepted payment from his flood insurer, which by contract only provided compensation in the event of losses from a *flood* peril."). It directly rebutted Kapson's and Noelle's all-or-nothing theory of the case.

Section 90.408, Florida Statutes, does not foreclose this evidence. § 90.408, Fla. Stat. (2022). The record does not show that this was a settlement or compromise of a claim "which was disputed as to validity or amount." <u>Id.</u> It appears the flood carrier compensated Kapson and Noelle without issue and the flood carrier simply fulfilled its contractual duty. <u>See</u> <u>Ashe</u>, 50 So. 3d at 655 ("For this court to accept his argument here, every payment of insurance benefits would constitute a settlement rather than simply fulfilling a contractual duty."); Charles W. Erhardt, et. al., <u>Florida Evidence</u> § 408.1 (2025 ed.) ("If there is no dispute as to either validity or amount, the section 90.408 prohibition does not apply because there is no compromise;"). Further, the evidence was offered to prove causation—not

4

liability or value.  § 90.408, Fla. Stat.; <u>Bankers Tr. Co. v. Basciano</u>, 960 So. 2d 773, 780 (Fla. 5th DCA 2007) ("If the evidence is offered for another purpose, the evidence is not barred by section 90.408 . . . .").

Lastly, the common law collateral source evidentiary rule does not bar this evidence.[2]  "The collateral source rule does not, however, bar the admission of evidence of collateral source payments where such evidence is relevant to liability or rebuts a party's theory of the case, or where the plaintiff's evidence may mislead the jury about the plaintiff's present financial circumstances."  <u>Russo v. Lorenzo</u>, 67 So. 3d 1165, 1167–68 (Fla. 4th DCA 2011) (internal citations omitted).  <u>See also</u> <u>Ashe</u>, 50 So. 3d at 654; <u>Rease v. Anheuser-Busch, Inc.</u>, 644 So. 2d 1383, 1387 (Fla. 1st DCA 1994).  In any event, the evidence of the amount of payment was excluded.  <u>See</u> <u>Citizens Prop. Ins. Corp. v. Hamilton</u>, 43 So. 3d 746, 751–52 (Fla. 1st DCA 2010).

In the end, the trial court did not abuse its discretion in admitting evidence of the flood claim and receipt of benefits.  So, we affirm.

Affirmed.

---

[2] We are aware of the district split concerning whether the collateral source evidentiary rule applies to contract actions.  <u>Contrast</u> <u>City of Miami Beach v. Carner</u>, 579 So. 2d 248, 253–54 (Fla. 3d DCA 1991), <u>Trs. of Cameron-Brown Inv. Grp. v. Tavormina</u>, 385 So. 2d 728, 729 (Fla. 3d DCA 1980), <u>with</u> <u>Hamilton</u>, 43 So. 3d at 751.  However, we do not need to address or resolve that issue here as there are additional reasons why this would not fall within the collateral source evidentiary rule.